Douglas C. McPHERSON and Connie K. McPherson, Plaintiffs–Appellees/Cross–Appellants (95–2269; 96–1017),

v.

Arthur T. KELSEY, Defendant,

Thomas Scott and Richard Boushong, Defendants/Cross–Appellees,

Steven Sowle and G. Michael Hocking, Defendants–Appellants (95–2234)/Cross–Appellees.

Nos. 95–2234, 95–2269 and 96–1017.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1996.

Decided Oct. 1, 1997.

Douglas C. McPherson, Lansing, MI, Plaintiff–Appellee/Cross–Appellant in 95–2234.

Elaine Whitfield Sharp, Whitfield, Sharp & Sharp, Marblehead, MA, for Plaintiff–Appellee/Cross–Appellant in 95–2269.

Daniel S. Sharp (argued and briefed), Whitfield, Sharp & Sharp, Marblehead, MS, for Connie K. McPherson in 95–2234, 95–2269 and Plaintiffs–Appellees/Cross–Appellants in 96–1017.

James L. Dyer (argued and briefed), Vandervoort, McFee, Christ, Carpenter & Fisher, Battle Creek, MI, for Defendants.

Gail P. Massad (briefed), Cummings, McClorey, Davis & Acho, Livonia, MI, for Defendants–Appellants/Cross–Appellees.

Before: LIVELY, NELSON, and RYAN, Circuit Judges.

## OPINION

DAVID A. NELSON, Circuit Judge.

Defendant G. Michael Hocking, a judge of the Circuit Court of Eaton County, Michigan, and defendant Steven Sowle, a corrections officer in the Eaton County Sheriff's Department, are appealing here from a $45,000 judgment entered against them in a civil rights action that arose out of an allegedly illegal stop and frisk incident in the county courthouse. The plaintiffs, Douglas C. McPherson and Connie K. McPherson, are cross-appealing from an adverse judgment on certain of their substantive claims and from the denial of a claim for attorney fees.

The main issues on which our decision will turn are whether the district court erred in denying defendants Hocking and Sowle qualified immunity from suit on Mr. McPherson's federal constitutional claims and in denying Officer Sowle statutory immunity with respect to a state law false-arrest claim. We conclude that immunity ought to have been granted as to each of the claims in question. To the extent that the judgment went against the defendants, the judgment will be reversed. We shall deny the cross-appeal in its entirety.

### I

Plaintiff Douglas McPherson was engaged in a dispute with his former wife, Judith McPherson, over the custody of their children. Judge Hocking was the circuit judge to whom the custody dispute had been assigned.

On August 15, 1991, Judge Hocking suspended Mr. McPherson's custodial rights pending final resolution of the matter. Mr. McPherson subsequently filed a motion for temporary visitation, and his motion was set down for hearing before Judge Hocking on September 23, 1991.

A caseworker warned the judge that there should be security at the hearing because of Mr. McPherson's alleged volatility and flaring temper. McPherson—a large, unsmiling man with a forceful voice, according to Judge Hocking—was described by the caseworker as an "eerie" and "intimidating" person.

Sheriff's Department Officer Lonny Mascho was assigned to Judge Hocking's courtroom on the day of the hearing. Defendant Steven Sowle replaced him in that assignment. When Officer Sowle relieved Officer Mascho, the record indicates, the latter told Sowle to keep a close eye on Mr. McPherson.

Judge Hocking ruled against Mr. McPherson at the hearing, denying him the visitation rights he had sought. Mr. McPherson, not surprisingly, was upset. After Judge Hocking left the bench, McPherson angrily told Officer Sowle and the court reporter that they worked for a very cruel system.

Officer Sowle reported this outburst to Judge Hocking and suggested that it might be prudent to make sure Mr. McPherson left the courtroom area. After questioning the court reporter and learning that she had been sufficiently unhappy about Mr. McPherson's display of temper to have Officer Sowle escort her out of the courtroom, the judge apparently accepted the officer's suggestion.

Mr. McPherson, meanwhile, had gone to the office of the Eaton County Friend of the Court to file a grievance against that official. Friend of the Court personnel gave him a grievance form and told him to take it to the office of Chief Judge Thomas Eveland. Mr. McPherson was advised that the way to get to Judge Eveland's office was to go through a certain door, marked "Staff Only," that sometimes was locked and sometimes was not locked.

Mr. McPherson made his way to the "Staff Only" door, found it unlocked, and went through the door, into a so-called "security area," and on to Judge Eveland's office. There he left the form with the judge's secretary.

Judge Hocking, who was unaware of McPherson's business with Judge Eveland's staff, happened to see Mr. McPherson in the security area after McPherson had left Judge Eveland's office. Judge Hocking told Mr. McPherson very forcefully to leave the area and "[d]on't ever come back here." McPherson responded, "Yes, sir." Judge Hocking then returned to his own office.

Soon thereafter it was reported to Judge Hocking that Mr. McPherson was "lurking," or pacing back and forth, outside the security door. The judge looked through the door and saw Mr. McPherson there.

Concerned that the man he thought he had ejected might present a safety threat, the judge instructed his clerk to call the sheriff's department for assistance. The clerk did so, apparently expressing concern that Mr. McPherson might have a gun. Defendant Thomas Scott, one of the officers responding to the call (the others were defendant Sowle and defendant Richard Boushong), proposed conducting a pat-down search of Mr. McPherson and inspecting his briefcase for weapons. The judge responded that this would be fine. The building was not equipped with metal detectors, and neither Judge Hocking nor the officers knew whether Mr. McPherson was in fact carrying a weapon.

Mr. McPherson and his current wife, plaintiff Connie McPherson, were standing in front of a bank of elevators when the officers found them. The officers—at least one of whom had drawn his weapon, according to Mr. McPherson—told the McPhersons not to get on the elevator.

Officers Sowle and Boushong denied that a weapon had been drawn by anyone. Be that as it may, it is uncontroverted that Officer Sowle proceeded to conduct a pat-down search of Mr. McPherson's person. Mr. McPherson claims that during the search he was "grabbed and squeezed by the testicles," which resulted in a great deal of pain. Officer Sowle denies having grabbed the man's testicles, and a jury eventually found in favor of the officer on Mr. McPherson's claims of battery and excessive use of force.

One of the officers, whom Mr. McPherson could not identify, searched McPherson's briefcase. It proved to contain nothing more than legal documents pertaining to the custody case. When the search was completed, the officers escorted the McPhersons out of the courthouse.

II

Mr. and Mrs. McPherson filed their lawsuit in federal court on September 22, 1993, just before the second anniversary of the

stop and frisk incident. Named as defendants were Arthur T. Kelsey, who had been sheriff of Eaton County at the time; officers Scott, Boushong and Sowle; and Judge Hocking. As amended in September of 1994, the complaint asserted claims under 42 U.S.C. § 1983 for an alleged deprivation of rights guaranteed by the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution, plus pendent state law claims for assault, battery, intentional infliction of emotional distress, false arrest, loss of consortium, and bystander emotional distress.

The defendants moved for summary judgment on a variety of grounds, including (with respect to the federal claims) both judicial or quasi-judicial immunity and qualified immunity. Statutorily created governmental immunity was asserted with respect to the state law claims. The district court ruled against the defendants on all of their claims to immunity, but granted summary judgment to Sheriff Kelsey on the ground that the sheriff had not personally participated in the conduct complained of. The plaintiffs have not appealed the dismissal of the claims against Sheriff Kelsey.

The case against the remaining defendants was tried to a jury of seven. In the course of the trial the district court entered judgment as a matter of law in favor of officers Scott and Boushong. The court directed a verdict in favor of Mr. McPherson, however, on the claims arising from the supposed violation by Officer Sowle and Judge Hocking of McPherson's Fourth Amendment right to be secure against unreasonable searches and seizures.

As directed, the jury returned verdicts against Judge Hocking and Officer Sowle on the unreasonable search and seizure claims. The jury also found for Mr. McPherson and against Officer Sowle on the state law false arrest claim; for Mr. McPherson and against Judge Hocking on the First Amendment (right of free speech) claim; and for Mrs. McPherson on her loss of consortium claim. The jury's verdict was in favor of Judge Hocking and Officer Sowle on all of the remaining claims against them. Mr. McPherson was awarded actual damages in the amount of $40,000, and Mrs. McPherson was awarded actual damages of $5,000. The jury declined a request by Mr. McPherson for punitive damages.

Judgment was entered in conformity with the jury's verdict, and the district court denied a timely motion by defendants Hocking and Sowle for a new trial. This appeal and cross-appeal followed.

### III

#### A

■ Judges have long been held to be absolutely immune from being sued on account of their judicial acts. See *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). Section 1983 was not intended to abolish this immunity. See *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The defendants' first argument, based on a line of cases that now includes *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), and *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), is that the district court erred in denying Judge Hocking's claim of judicial immunity.

The defendants contend that Judge Hocking was functioning in his judicial capacity when he instructed the guards to search McPherson's person and briefcase as a security measure. See *Martinez v. Winner*, 771 F.2d 424 (10th Cir.1985), *modified*, 778 F.2d 553 (10th Cir.1985), *vacated as moot, Tyus v. Martinez*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986). Proceeding from this premise, the defendants argue that Officer Sowle was entitled to quasi-judicial immunity, courthouse security being a judicial function that is commonly delegated to court security officers. *Cf. Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (absolute immunity may extend to non-judges for acts functionally equivalent to judicial acts).

Citing *Guercio v. Brody*, 814 F.2d 1115 (6th Cir.1987), *cert. denied*, 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988), the plaintiffs maintain that the acts complained of here were not judicial in nature. The

plaintiffs contend that *Martinez* is distinguishable because it involved security precautions taken during a trial. The plaintiffs also point out that Mr. McPherson had no expectation of dealing with Judge Hocking in his judicial capacity during the time frame in question.

The applicability of judicial or quasi-judicial immunity on the facts presented here is a close question, in our view. Given our disposition of the issue of qualified immunity, the issue to which we turn next, we shall pretermit the question of judicial/quasi-judicial immunity.

## B

Under the doctrine of qualified immunity, government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In the case at bar, the rights in question are of constitutional origin.

The Fourth Amendment, as a general matter, requires probable cause and a search warrant before an official may conduct a search. Judge-made exceptions to the general rule, however, are legion. One such exception—the one applicable here—is found in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ A *Terry* stop has been defined as "the act of a police officer's stopping a person whose behavior is reasonably considered suspicious and frisking that person for weapons." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 873 (2d ed.1995). The Court held in *Terry* that an investigatory stop requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

The so-called "reasonable suspicion" standard of *Terry*

"does not mean evidence beyond a reasonable doubt, or by clear and convincing evidence, or even by a preponderance of the evidence. Reasonable suspicion is not even equal to a finding of probable cause. Rather, reasonable suspicion requires only specific objective facts upon which a prudent official, in light of his experience, would conclude that illicit activity might be in progress." *Spear v. Sowders,* 71 F.3d 626, 631 (6th Cir.1995).

Further,

"[r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is *less reliable* than that required to show probable cause." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (emphasis added).

The defendants argue here that the burden is on the plaintiffs to show that the unlawfulness of the defendants' action was apparent in light of existing law. They contend that, in fact, the contrary was well-established, because a law enforcement officer may stop, question, and frisk a suspect for weapons when the totality of the circumstances warrants the intrusion. In response, the plaintiffs contend that the "stop" component is separate and distinct from the "search" component of a *Terry* stop, and that the standard to be applied to the former is "reasonable suspicion," while the standard to be applied to the latter is "reasonable belief."

■ The cases cited by the plaintiffs do not support this dual-standard thesis, and our own research has disclosed no support for it. The plaintiffs apparently concede that the defendants did have a reasonable suspicion that McPherson was armed and dangerous. We reject the plaintiffs' argument that the defendants were not authorized to perform a search because they had no reasonable *belief* on that score.

■ Officer Sowle was acting pursuant to information he obtained from officers Scott and Boushong, who in turn were acting pur-

suant to instructions from Judge Hocking and on the basis of information from a member of Judge Hocking's staff that McPherson might have a weapon. Under the circumstances, a reasonable official in Sowle's position would have entertained sufficient suspicion to justify a search. The fact that the officer's information turned out to be erroneous is not a reason for holding Sowle liable; the question, to repeat, is the *reasonableness* of his actions. We conclude that his actions were reasonable and that Sowle was entitled to qualified immunity.

■ Judge Hocking, in our view, was also entitled to qualified immunity. If a reasonable and prudent person in Judge Hocking's circumstances would have been warranted in thinking that anyone's safety (including the officers') was at risk, it seems to us that Judge Hocking's conduct would be objectively reasonable under *Terry*, 392 U.S. at 23–27, 88 S.Ct. at 1881–83. In today's world, sad to say—and given the emotionally charged character of a proceeding in which a father is denied child custody or visitation rights—it does not seem to us that Judge Hocking's concerns were objectively unreasonable.

As the record discloses, Judge Hocking was well aware of the potential for violence in custody disputes generally. In this specific instance—where the judge had been warned in advance to have security in the courtroom because of Mr. McPherson's supposed "volatility"—the judge had been told about the angry comment made by Mr. McPherson after the court's adverse ruling. Judge Hocking had subsequently found Mr. McPherson in a security area where, from the judge's perspective, Mr. McPherson had no right to be. After ordering McPherson out of that area, the judge was told that the man was pacing back and forth outside the "Staff Only" door. Upon confirming Mr. McPherson's presence with his own eyes, the judge took the steps that led to the search. Viewed objectively, the judge's concerns were clearly legitimate—and the actions he took in light of those concerns were objectively reasonable, in our opinion, even though they proved to have been unnecessary. Judge Hocking cannot be held liable for the alleged violation of Mr. McPherson's Fourth Amendment rights, in our view, and it follows from the facts we have recounted that the judge's immunity extends to Mr. McPherson's First Amendment claim as well.

### C

■ A Michigan statute accords absolute immunity to some government actors, under some circumstances:

"(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the officer ... while in the course of employment or service ... if all of the following are met:

(a) The officer ... is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, 'gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

\* \* \* \* \* \*

(5) Judges, legislators, and the elective or highest appointive executive officials of all levels of government are immune from tort liability for injuries to persons or damages to property whenever they are acting within the scope of their judicial, legislative, or executive authority." Mich. Comp. Laws § 691.1407.

The defendants argue that this statute gives Judge Hocking absolute immunity with regard to the plaintiffs' state-law claims. As the plaintiffs point out, however, the state statute cannot speak to Judge Hocking's liability on the plaintiffs' federal claims, see *Howlett v. Rose*, 496 U.S. 356, 377–78, 110 S.Ct. 2430, 2443–44, 110 L.Ed.2d 332 (1990), and Judge Hocking was not named as a defendant in any of the plaintiffs' pendent

state-law claims. The applicability of the statute to Judge Hocking is thus not before us.

The defendants also argue that Officer Sowle was entitled to immunity under the statute. We agree. Sowle was clearly acting in the course of his employment and within the scope of his authority, the sheriff's department was engaged in the discharge of a governmental function, and Sowle's conduct did not amount to gross negligence.

■ Although Officer Sowle expressly relied on the statute in his motion for summary judgment, he did not move for judgment as a matter of law on this ground at the trial stage. We have held that "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly,* 896 F.2d 1013, 1016 (6th Cir.1990).

*Jarrett,* however, dealt with a situation where the district court had concluded—arguably in error—that the nonmoving party had shown the existence of genuine issues of material fact which precluded summary judgment. It was in this context that the *Jarrett* panel held that the denial of summary judgment could not be appealed once a verdict had been returned against the moving party following a full trial on the merits.

*Jarrett* recognized that the moving party suffers an injustice when his summary judgment motion is denied improperly. But our opinion observed that "it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgement motion demonstrated the need for a trial." *Id.* at 1016 n. 1, quoting *Locricchio v. Legal Servs. Corp.,* 833 F.2d 1352, 1359 (9th Cir.1987). In the case at bar no comparable injustice would flow from appellate review of the governmental immunity issue. As presented here, the issue is purely one of law. *Cf. Alexander v. Riccinto,* 192 Mich.App. 65, 70, 481 N.W.2d 6, 8 (1991) ("the issue of governmental immunity ... is one of law"). It was the plainest sort of legal error to reject Officer Sowle's governmental immunity defense, and although the officer's failure to renew that defense at trial was unfortunate, we are not persuaded that it was fatal under the unusual facts of this case.

## D

In their cross-appeal, the plaintiffs argue that the district court erred in granting judgment as a matter of law on the Fourth Amendment and false-arrest claims against Officers Scott and Boushong. As to the Fourth Amendment, the plaintiffs renew their argument that the appropriate standard is that of "reasonable belief," rather than "reasonable suspicion." As to false arrest, the plaintiffs' argument is, at best, cursory; the plaintiffs simply assert that Scott and Boushong were present at the time of an incident which the jury concluded amounted to a false arrest by Sowle, and that Scott and Boushong therefore could not have been entitled to judgment as a matter of law.

Once again, we note that the plaintiffs' suggested distinction between belief and suspicion is not one that is supported by the case law. For the same reasons that led us to conclude that Sowle was entitled to qualified immunity, we conclude that Scott and Boushong should likewise be free from liability under § 1983.

■ The plaintiffs have offered no real analysis as far as their state law false-arrest claim is concerned. They have not, for example, explained the elements of a false-arrest claim under Michigan law, see *Adams v. National Bank of Detroit,* 444 Mich. 329, 508 N.W.2d 464, 474 n. 8 (1993) (Mallett, J., concurring), and they have not pointed to evidence in the record that could satisfy these elements as to these defendants. Nor have the plaintiffs offered any support for the proposition that because Sowle was found liable by the jury, Scott and Boushong could not have been entitled to judgment in their favor—a proposition the validity of which is far from self-evident.

■ "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to

mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir. 1995) (citation omitted); *accord United States v. Hayter Oil Co.,* 51 F.3d 1265, 1269 (6th Cir.1995); *United States v. Phibbs,* 999 F.2d 1053, 1080 n. 12 (6th Cir.1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994). Under the circumstances, we conclude that the plaintiffs do not seriously intend to pursue their false-arrest argument with respect to Scott and Boushong.

### IV

In light of the foregoing, the remaining issues need not be addressed. Insofar as the judgment entered by the district court was in favor of the defendants, the judgment is **AFFIRMED**. Insofar as it was in favor of the plaintiffs, it is **REVERSED**.