RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0170P (6th Cir.)
File Name: 01a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

INDECK ENERGY SERVICES, INC., an Illinois corporation; INDECK SAGINAW LIMITED PARTNERSHIP,

　　　*Plaintiffs-Appellants,*

　　　*v.*

No. 99-1433

CONSUMERS ENERGY COMPANY, a Michigan corporation; CMS ENERGY CORPORATION, a Michigan corporation,

　　　*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 97-10366—Robert H. Cleland, District Judge.

Argued: June 23, 2000

Decided and Filed: October 6, 2000[*]

---

[*]This decision was originally issued as an "unpublished decision" filed on October 6, 2000. On May 16, 2001, the court designated the opinion as one recommended for full-text publication.

Before: NELSON, BOGGS, and DAUGHTREY, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:** Mary Massaron Ross, PLUNKETT & COONEY,
Detroit, Michigan, for Appellants. Eugene Driker, BARRIS,
SOTT, DENN & DRIKER, Detroit, Michigan, for Appellees.
**ON BRIEF:** Mary Massaron Ross, PLUNKETT &
COONEY, Detroit, Michigan, for Appellants. Eugene Driker,
Dennis M. Barnes, BARRIS, SOTT, DENN & DRIKER,
Detroit, Michigan, Michael G. Wilson, James E. Brunner,
CONSUMERS POWER COMPANY, Jackson, Michigan,
Michael J. Sheridan, CMS ENERGY CORPORATION,
Dearborn, Michigan, for Appellees. J. Peter Lark, OFFICE
OF THE ATTORNEY GENERAL, TRANSPORTATION
DIVISION, Lansing, Michigan, for Amicus Curiae.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. This
appeal arises from an antitrust action against two public utility
companies, Consumers Energy Company and its holding
company, CMS Energy Corporation. Consumers Energy
provides energy for a substantial portion of lower Michigan.
The plaintiffs, Indeck Energy Services and Indeck-Saginaw
(collectively, "Indeck"), operate "co-generation systems,"
which provide energy for large commercial and industrial
energy customers. They appeal from the district court's
dismissal of CMS Energy for failure to state a claim on which
relief could be granted. They also appeal the dismissal of
their antitrust and state law claims, alleging that the court
erroneously applied the "state action doctrine" exemption
from antitrust liability and mistakenly held that Indeck failed
to prove an antitrust injury. Because we conclude that the

court's order dismissing CMS Energy was improper. As to
the federal claims, we find it unnecessary to treat the
dismissal of CMS Energy at length, given our determination
that the plaintiff has failed to establish standing in this case.

That leaves, however, the plaintiff's claim that the district
court erred in dismissing its state law claim of tortious
interference with a prospective economic advantage against
both Consumers Energy and CMS Energy. While the state
law claim asserted against Consumers Energy was dismissed
without prejudice, the dismissal of the state law claim against
CMS Energy did not contain such a qualification and was
thus dismissed with prejudice. On appeal, however, the
plaintiff makes no specific arguments challenging the ruling
regarding dismissal of the state claim against CMS Energy.
Because even "issues adverted to in a perfunctory manner,
unaccompanied by some effort at developed argumentation,
are deemed waived," any challenge to the dismissal of the
state claims is not properly before this court. *See United
States v. Layne*, 192 F.3d 556, 566-67 (6th Cir. 1999), *cert.
denied*, 120 S.Ct. 1443 (2000) (quoting *McPherson v. Kelsey*,
125 F.3d 989, 995-96 (6th Cir. 1997)).

**CONCLUSION**

For the reasons set out above, we find no error in
connection with the district court's decision to dismiss the
claims against Consumers Energy, because Indeck failed to
establish antitrust injury and standing. Furthermore, that
same failure of the plaintiff to meet its standing threshold
justifies the dismissal of the federal claims against CMS
Energy as well. As a result, we AFFIRM the judgment of the
district court dismissing all federal claims against the
defendants, as well as the district court's dismissal of the state
law claim against CMS Energy with prejudice and the
dismissal of the state law claim against Consumers Energy
without prejudice. In light of these holdings, we pretermit
discussion of all other claims of error raised on appeal by
Indeck.

Furthermore, Indeck claims that Consumers Energy "exploited this situation by purchasing power for these captive customers from [its own affiliated power producer]."

What Indeck fails to allege, however, is that Consumers Energy's desire to "buy low" meant that all other unsuccessful bidders for Consumers Energy's business were driven out of the market *and* that thereafter Consumers Energy paid above-market prices for excess power. Had the plaintiff asserted such claims in its complaint, Indeck might have alleged sufficient facts to defeat the defendant's motion to dismiss. As it is, the complaint in this matter gives no indication that Consumers Energy's tactics caused any harm to competition in general. Indeck and other independent power producers have no statutory right to compete in the economic marketplace on their own terms and in such a manner as to accumulate expected profits. As determined by the district court, therefore, allegations that companies were unable to receive prices for excess power that they felt were "reasonable" are insufficient to justify a finding that Indeck has standing to prosecute this claim against Consumers Energy or that the plaintiff suffered antitrust injury. In the absence of concrete allegations of harm to the competitive nature of energy provision, the district court thus was correct in granting the defendant's motion to dismiss the claims against it as a matter of law.

## II.  Dismissal Of Claims Against CMS Energy

Indeck's antitrust complaint in this matter listed as defendants not only Consumers Energy, but also Consumers Energy's "parent and holding company," CMS Energy. Prior to ruling upon Consumers Energy's motion to dismiss based upon state action immunity and lack of standing, however, the district court dismissed CMS Energy as a defendant on Indeck's claims of violations of §§ 1 and 2 of the Sherman Act, of § 3 of the Clayton Act, and of the Michigan law against tortious interference with prospective business advantage. On appeal, Indeck now asserts that the district

district court ruled correctly on the standing issue, we find it unnecessary to address the question of whether the court properly applied the state action doctrine in this case. Furthermore, we find no error in the dismissal of CMS Energy as a party defendant.

### FACTUAL AND PROCEDURAL BACKGROUND

According to its complaint, Indeck had agreed with General Motors in 1994 to develop a co-generation facility at General Motors's Saginaw Steering Division Plant. As a result, Indeck undertook extensive preparations for work on the project. Simultaneously, General Motors also selected Indeck as its "preferred developer" of another co-generation facility at its plant in Flint, Michigan, leading Indeck to begin substantial development efforts on that project as well.

Indeck alleges that the success of its Saginaw and Flint co-generation projects was undermined by Consumers Energy's reluctance to share the public utility's facilities and transmission services. Additionally, Indeck contends that Consumers Energy sabotaged the plaintiff's attempts to service General Motors with co-generated power by insisting on increases in rates for the provision of stand-by electric power to the plants. Finally, Indeck alleges, Consumers Energy negotiated its own supply agreement with General Motors, under which the utility contracted to be the exclusive supplier of power for five to ten years to 19 General Motors facilities, including the Flint plant, with an option to add the Saginaw facility. In order to entice General Motors to include the Saginaw plant in the power agreement, Consumers Energy offered General Motors a "multi-million dollar discount" on power costs for all other covered facilities, contingent upon inclusion of the Saginaw plant in the contract. Not surprisingly, General Motors agreed to the discounted power costs in exchange for the limited exclusivity deal.

Because of the tremendous increase in the power demand due to its exclusive power-provision agreements with the 20

General Motors facilities and with 17 other large industrial/commercial customers, Consumers Energy was forced to seek additional power from other suppliers. The plaintiff contends that, rather than contract with Indeck or other independent generators, however, Consumers Energy purchased the necessary power only from its own affiliated producer, Midland Co-generation Venture Limited Partnership. Consequently, Indeck asserts, Consumers Energy "succeeded in excluding competition from over 80 percent of the Relevant At Risk Market while at the same time keeping potential supplemental and alternative sources of electrical power out of the market."

Aggrieved by the actions of the defendants, Indeck filed suit in federal district court against Consumers Energy and against CMS Energy, alleging violations of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, § 3 of the Clayton Act, 15 U.S.C. § 14, and the Michigan law of tortious interference with a prospective economic advantage. The defendants responded by filing motions to dismiss and "for summary disposition and/or to dismiss." The district court granted the motion to dismiss defendant CMS Energy because the complaint failed to state a claim against that defendant upon which relief could be granted. Later, the court also granted judgment to Consumers Energy on the federal causes of action, determining that the utility was exempt from federal antitrust legislation under the state action doctrine and that Indeck had failed to show the requisite antitrust injury. The court dismissed without prejudice Indeck's Michigan state law claim. From these and other related rulings, Indeck now appeals.

### DISCUSSION

### I. Standing

In granting summary judgment in favor of the defendants, the district court concluded that Indeck's complaint failed to allege the requisite antitrust injury and that the plaintiff

competitors from the co-generation market in eastern Michigan.

The mere allegation of such a selection, however, does not militate against the grant of a motion to dismiss the plaintiff's claims. Absent some indication that a less-than-arm's-length transaction destroyed or damaged the competitive environment in power generation, the fact that Consumers Energy selected a co-generation partner other than the plaintiff does not amount to the injury necessary to establish antitrust standing. Theoretically, any selection of a competitor in the marketplace will cause some economic harm to the entities not chosen for the provision of goods or services. In a situation such as the one presented in this case, however, where the power provision agreements are of limited duration, unfair pricing or unfair treatment of a customer will lead that consumer to investigate alternate vendors in future contractual dealings. Once again, Indeck has alleged only injury to itself in not being selected by Consumers Energy to provide co-generation services, not injury to the customers who voluntarily chose to contract with Consumers Energy in a free exchange of payment and benefit. Such an injury to a competitor, rather than to competition, is not the type of injury to which the antitrust laws address themselves. Absent some indication that it could offer a superior product or a lower cost, Indeck has thus failed to allege the requisite antitrust injury on this allegation as well.

### D. "Refusal" Of Consumers Energy To Buy Excess Power From Plaintiff

Indeck also attempts to establish its standing and antitrust injury by alleging that Consumers Energy offered to independent co-generators "unreasonably low payments for excess power" that those co-generators produced and sought to sell to Consumers Energy to alleviate the defendant's insufficient capacity. The plaintiff asserts that such action by Consumers Energy placed Indeck "in an exclusionary 'price-cost' squeeze" that hampered competition for customers.

### B. Consumers Energy's Contracts With Other Large Customers

Indeck also insists that contracts entered into by Consumers Energy with 17 other large power consumers in eastern Michigan other than General Motors-Saginaw violated antitrust laws by effectively preempting 87% of the co-generation market. The plaintiff argues that such contracts not only excluded Indeck from the market but also caused the customers to lose low-cost alternatives to Consumers Energy's product.

Indeck does not contend that it actually had agreements with any of the 17 power users referenced in its claim or that it could have served as a true lower-cost alternative to Consumers Energy. As a result, any claim of injury to the plaintiff from the defendants' actions is speculative at best. Moreover, even if Indeck were able to establish the preemption from the relevant market that it asserts, it has failed to allege how such acts have injured competition, especially in light of the discounted rates offered to the customers, in light of the fact that the exclusive contracts were of limited duration, and in light of the fact that the customers were free to seek other power generators at the conclusion of the contracts. Once again, a balancing of the relevant factors to establish antitrust injury leads to the conclusion that the district court properly and summarily granted judgment as a matter of law on this portion of Indeck's claims.

### C. Favoritism By Consumers Energy For Midland Co-generation Venture

Indeck further contends that the anti-competitive nature of Consumers Energy's actions is shown by the defendants' selection of the affiliated Midland Co-generation Venture as the sole co-generator for its power provision agreements with high-use customers. The plaintiff argues that the selection of Midland effectively eliminated Indeck and all other

therefore lacked standing to prosecute this cause of action. The court determined that no antitrust injury was occasioned when Consumers Energy contracted with customers other than General Motors, when Consumers Energy allegedly showed favoritism to Midland Co-generation Venture, or when Consumers Energy refused to enter into agreements with the plaintiff to purchase excess energy generated by Indeck.

Under Sixth Circuit case law, "it is not enough for the plaintiff to claim economic injury: 'Plaintiffs must prove *antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398, 402 (6th Cir. 1997) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Such a heightened standard is required because the relevant antitrust laws "were enacted for 'the protection of *competition* not *competitors*.'" *Brunswick Corp.*, 429 U.S. at 488 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)).

By emphasizing the importance of establishing "antitrust injury," courts ensure "that antitrust litigants use the laws to prevent anti-competitive action and make[] certain that they will not be able to recover under the antitrust laws when the action challenged would tend to promote competition in the economic sense." *Hypoint Technology, Inc. v. Hewlett-Packard Co.*, 949 F.2d 874, 877 (6th Cir. 1991). Otherwise, "routine disputes between business competitors would be elevated to the status of an antitrust action, thereby trivializing the Act because of its too ready availability." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993).

To assist courts in fulfilling their responsibilities of ensuring that antitrust laws are not "trivialized," the Supreme Court has articulated certain factors to be analyzed in determining whether a plaintiff has established antitrust

standing. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 537-45 (1983). Those factors include:

> (1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation.

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983). All five factors must be balanced, however, with no one factor being determinative. *See Peck v. General Motors Corp.*, 894 F.2d 844, 846 (6th Cir. 1990). Furthermore, as noted by this court in *Valley Products*, "[t]he Sixth Circuit, it is fair to say, has been reasonably aggressive in using the antitrust injury doctrine to bar recovery where the asserted injury, although linked to an alleged violation of antitrust laws, flows directly from conduct that is not itself an antitrust violation." *Id.* at 403.

In this case, an examination of the antitrust standing factors leads to the inescapable conclusion that the district court appropriately dismissed Indeck's cause of action against the defendants.[1] Significantly, the only harm allegedly suffered by Indeck was in the company's capacity as a competitor in the marketplace, not as a defender of marketplace competition. Although antitrust actions may, of course, be initiated by marketplace competitors, those actors in the

---

[1] An identical conclusion would be reached whether this issue is analyzed under Rule 56 or under Rule 12(b)(6). Hence, we need not address Indeck's contention that the district court improperly applied summary judgment analysis to a Rule 12 proceeding.

economic forum must at least allege that exclusion of the competitor from the marketplace results in the elimination of a superior product or a lower-cost alternative. The record in this appeal presents no indication that *competition* itself was harmed by any act of the defendants. Consequently, the antitrust damages alleged by Indeck are too indirect and speculative to justify assertion of federal antitrust jurisdiction over this matter.

### A. Consumers Energy's Contract With General Motors-Saginaw Plant

Indeck asserts that Consumers Energy violated antitrust laws by negotiating a power agreement with the General Motors-Saginaw plant after officials from that factory had discussed with Indeck the possibility of having the plaintiff provide co-generated power for the facility. *Consumers Energy*, however, did not cause antitrust injury to Indeck by luring General Motors-Saginaw into its fold. Instead, General Motors itself decided not to pursue further its negotiations with the plaintiff, but rather to take advantage of the discounted rates offered by Consumers Energy. No allegation in the complaint indicates in any manner whatsoever how General Motors itself was harmed or how other customers in the energy market suffered by agreeing to a limited power provision agreement with a lower bidder for such energy generation. Moreover, as the direct victim of the alleged antitrust violation in this regard, General Motors-Saginaw could prosecute its own cause of action should it deem the actions of Consumers Energy inappropriate. Consequently, a balancing of the factors to be considered in an antitrust standing case tilts in favor of a decision that no antitrust injury can be proved, as a matter of law, concerning the Consumers Energy agreement with General Motors-Saginaw.