NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0235n.06

No. 17-2136

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

U.S. FILTER/JWI, INC.,                  )
     Plaintiff,                       )
                                      )
v.                                      )
                                      )
J-PARTS, L.L.C., et al.,                )
     Defendants-Appellees.            )
_____/
EVOQUA WATER TECHNOLOGIES,              )
LLC,                                    )
     Plaintiff-Appellant,             )
                                      )
v.                                      )
                                      )
W.M. WATERMARK, LLC, and                )
MICHAEL GETHIN, Individually,           )
                                      )
     Defendants-Appellees.            )
_____/

**FILED**
May 07, 2018
DEBORAH S. HUNT, Clerk

On Appeal from the United States District Court for the Western District of Michigan

**BEFORE: GUY, SUTTON, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** The appellant asks us to interpret a consent decree in its favor. The appellees state that we do not have jurisdiction. For the reasons that follow, we dismiss the appeal for lack of jurisdiction.

## I.

In 2003, U.S. Filter sued Michael Gethin and the predecessor-in-interest to M.W. Watermark, alleging various offenses involving U.S. Filter's intellectual property. *See U.S.*

*Filter/JWI, Inc. v. J-Parts, L.L.C.*, No. 5:03-cv-127 (W.D. Mich.) ("2003 Litigation"). That

litigation resulted in a consent decree, which permanently enjoined the defendants—and their

successors—from further wrongdoing. In the years that followed, U.S. Filter's business

underwent several changes in ownership and structure, leaving the appellant, Evoqua, as the

putative owner of the intellectual property that the consent decree addressed.[1]

In 2016, Evoqua filed a new lawsuit against Gethin and M.W. Watermark (collectively,

"Watermark"). *See Evoqua Water Techs. LLC v. M.W. Watermark, LLC*, No. 1:16-cv-014 (W.D.

Mich.) ("2016 Litigation"). The case was assigned to Judge Robert Holmes Bell. In addition to

causes of action brought under federal and state law, the complaint identified "contempt" as a

cause of action, alleging that defendants violated the consent decree issued in the 2003

Litigation. Evoqua also filed a motion for sanctions seeking the same relief. Judge Bell granted

the motion, holding Watermark in civil contempt. But Judge Bell retired before issuing an

award, and the case was reassigned to Chief Judge Robert J. Jonker.

Watermark then moved for an order dissolving or modifying the permanent injunction.

Watermark disputed whether Evoqua was entitled to enforce the consent decree as U.S. Filter's

true successor, but that was not the motion's main argument. Because of the successorship

dispute, Judge Jonker reassigned the 2003 Litigation to himself; ordered Watermark to refile its

motion on the 2003 docket; and invited both parties to file briefs "outlining their position on

whether Evoqua is or is not the successor-in-interest to U.S. Filter/JWI, Inc., and the significance

(if any) of the answer." The order expressly stated that the purpose of refiling Watermark's

motion in the 2003 Litigation was to "ensur[e] that all interested parties, including at least the

---

[1] The record refers to the consent decree interchangeably as the permanent injunction.

actual parties to the litigation ending in the Permanent Injunction, are before the Court and on notice of what is at issue."

Watermark complied, refiling its motion for relief from the permanent injunction in the 2003 Litigation.[2] On both dockets, the district court denied, without prejudice, Watermark's motion to dissolve the injunction because the motion was "premature" in light of the unresolved successorship issue.

No party had taken the court up on its invitation to brief the successorship issue. Accordingly, on both dockets, the judge again ordered supplemental briefing, this time on "(1) whether the consent judgment in [the 2003 Litigation] is assignable; (2) whether the consent judgment was actually assigned to Evoqua; and (3) whether the earlier contempt finding should be vacated if there was no effective assignment." The order identified the parties to whom it applied as "the plaintiff and defendants in 1:16-CV-14," i.e., the 2016 Litigation. Watermark filed its brief in both the 2003 and 2016 Litigations, while Evoqua filed only in the 2003 Litigation. From then on, the parties filed their responsive briefs in the 2003 Litigation, along with related motions to seal.

After a hearing, the district court issued an opinion and order vacating Judge Bell's contempt order and dismissing Evoqua's claim for contempt. The opinion and order were entered on both dockets using both captions. Evoqua appealed the dismissal of the contempt order, filing its notice of appeal in the 2003 Litigation. Meanwhile, the parties proceeded to trial on the rest of Evoqua's claims in the 2016 Litigation. On April 12, 2018, a jury found Watermark liable for trademark infringement but not liable for false advertising. The jury

---

[2] The court noticed the hearing on Watermark's motions in both the 2003 and 2016 Litigations, using both captions. The transcript of that hearing bore only the 2016 caption and appeared only on the 2016 docket.

awarded no damages. The district court has given the parties until May 18 to file any post-trial motions, including any motions for equitable relief. Evoqua argues that we have appellate jurisdiction for two independently sufficient reasons, which we consider in turn.

## II.

Under 28 U.S.C. § 1291, we have jurisdiction over "appeals from all final decisions of the district courts of the United States." "We have appellate jurisdiction over an appeal from a final order in a severed action," even if there is no final order in the action from which it was severed. *Kitchen v. Heyns*, 802 F.3d 873, 875 (6th Cir. 2015).

Evoqua argues that the district court's decision to vacate its earlier contempt finding was a final decision in the 2003 Litigation because the district court "effectively" severed the contempt claim from the 2016 Litigation. Evoqua does not cite any law explaining when we should recognize an "effective" severance if the district court did not state that it was severing a claim under Rule 21.[3] Instead, Evoqua points to the district judge's management of the two dockets: In the 2016 Litigation, the district court denied without prejudice Watermark's motion for relief from the permanent injunction and ordered it to be refiled in the 2003 Litigation. From then on, the court permitted some of the parties' briefs to appear exclusively in the 2003 Litigation (even though the court continued filing its own orders on both dockets using both captions).

But the judge explained that he only caused the contempt issue to appear in the 2003 Litigation because he wanted all interested parties to receive notice. *See* 4/26/2017 Order at 1-2

---

[3] This alone is sufficient to conclude that Evoqua has not met its burden to demonstrate the court severed the claim, in light of Evoqua's repeated qualification of the alleged severance as "effective." Evoqua has not provided authority that "effective" severance is possible—a question we decline to answer—let alone shown it occurred here. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

(noting that "counsel for Plaintiff in [the 2003 Litigation] does not appear to be affiliated with counsel for Plaintiff in [the 2016 Litigation]"). Causing the contempt issue to appear in the 2003 Litigation accomplishes the goal of providing notice; taking the extra step of *severing* the contempt issue does not advance that goal any further. And, as exemplified here, severance can lead to consequences unrelated to notice.

Other facts work against Evoqua's argument that the district court severed the contempt claim. Until the district court resolved the issue of contempt, it continued to list both Litigations' captions on all related orders. In fact, after the district court had ostensibly "severed" the contempt claim by incorporating the 2003 Litigation, it noticed a related hearing on both dockets and filed the transcript of that hearing only in the 2016 Litigation using that case caption. When Watermark filed its supplemental brief in both the 2003 and 2016 Litigations, the judge did not strike the one filed in the 2016 Litigation. Finally, the allegedly final order in the 2003 Litigation—vacatur of the contempt finding—principally affected only the 2016 Litigation, which undermines the theory that the judge severed the contempt claim from the 2016 Litigation.[4]

### III.

We also have jurisdiction over appeals from "[i]nterlocutory orders . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 28 U.S.C. § 1292(a)(1). As an alternative to its severance argument, Evoqua

---

[4] Although Evoqua acknowledges that the allegedly final order in the 2003 Litigation affected an order in the 2016 Litigation, it argues that prior non-final orders, such as the contempt finding, "merge into the final order, even if those non-final orders originate in other civil actions." Pl. Reply at 4 (citing *Kitchen*, 802 F.3d at 875). The merger doctrine discussed in *Kitchen*, however, addresses when a non-final order becomes *appealable* by merging with a final order. Evoqua has no interest in appealing Judge Bell's order finding Watermark in contempt. *Kitchen* is therefore inapplicable.

claims that the district court "effectively" dissolved the injunction when the district court concluded no entity exists that could enforce the consent decree.

The record does not support Evoqua's premise. The hearing transcript shows that the district court was exploring legal issues, not making findings of fact as to whether there was any entity in existence that could enforce the injunction. Nor does Evoqua support its legal premise that the disappearance of an entity entitled to enforce an injunction (or a judicial recognition of that disappearance) results in a dissolution of the injunction.

Even if the district court had "effectively" dissolved the injunction, we would still lack appellate jurisdiction. "[A]ppellate courts have jurisdiction over orders that have 'the practical effect' of dissolving an injunction only when the appealing party shows that it will (1) suffer a 'serious, perhaps irreparable, consequence' as a result and (2) be unable to challenge the non-final order except by 'immediate appeal.'" *Kitchen*, 802 F.3d at 876 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981)). Evoqua has not shown it will suffer a serious consequence absent an interlocutory appeal; to the contrary, Evoqua believes that, under the Settlement Agreement, to which the consent decree was attached, it has a contractual right to damages for Watermark's conduct. *See also U.S. Filter/JWI, Inc. v. J-Parts, L.L.C.*, No. 1:16-CV-14, 2017 WL 3574785, at *4 (W.D. Mich. Aug. 18, 2017) (holding that vacatur "does not prevent Evoqua from enforcing any intellectual-property rights that it obtained from U.S. Filter, in an appropriate cause of action"). Evoqua asserts that "violations by Watermark . . . will not be adequately compensable by money damages." But it does not support this assertion with evidence or argument. Likewise, Evoqua has failed to explain why waiting for a final order will render it "unable" to challenge the district court's decision.

**IV.**

Because we lack jurisdiction over the claim involving the consent decree, we also lack jurisdiction over the appeal of the district court's denial of Evoqua's motions to seal.

\*       \*       \*

The appeal is DISMISSED for lack of jurisdiction.