**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0320n.06

Case No. 19-3988

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 03, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MIGUEL VILLA-NAJERA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |

BEFORE: CLAY, ROGERS, and DONALD, Circuit Judges

**BERNICE BOUIE DONALD, Circuit Judge.** Miguel Villa-Najera, a native and citizen of Mexico, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his application for withholding of removal and protection under the Convention Against Torture ("CAT"). Villa-Najera asserts that the denial of his application is not supported by substantial evidence and that the IJ erred by limiting the testimony of his expert witness and finding him not credible. Because Villa-Najera has failed to meet his burden of proof for withholding of removal and protection under the CAT, we **DENY** his petition.

I.

Villa-Najera first entered the United States with his family in 1992, at the age of sixteen, after leaving his home in Acapulco, Mexico. He has lived in the United States for twenty-seven

years and has five children who are United States citizens. Villa-Najera has been convicted of several criminal offenses in the United States and has previously been removed to Mexico twice, first following a conviction for statutory rape and then for illegal re-entry.

In 2014, after Villa-Najera served a six-month sentence for illegal re-entry, he was deported to Nuevo Laredo, Mexico.[1] From there, Villa-Najera traveled to Matamoros, where he was kidnapped by members of the "New Generation" cartel at the bus station. The cartel drove Villa-Najera to an empty house where they took photos of him, obtained the address of his family's house in Acapulco, and eventually asked him to work for them in extortion and selling drugs because he had no money to pay them. After Villa-Najera refused to work for the cartel, he was struck with the back of a rifle and stabbed in his left shoulder. On the fifth day of his captivity, an elderly woman arrived at the house to help care for Villa-Najera's wounds. The woman brought Villa-Najera food for the first time and took an interest in him because of his refusal to work for the cartel. When she came back on the eleventh day, after the cartel member guarding Villa-Najera fell asleep, she untied him and drove him to safety. Subsequent to Villa-Najera's escape, members of the cartel took physical possession of Villa-Najera's family's home in Acapulco, which was being rented out by Villa-Najera's sister, and denied the renters access to it.

After his escape, Villa-Najera once again illegally re-entered the United States, and on December 10, 2018, was arrested for and later convicted of domestic violence in Ohio. On February 21, 2019, after serving his eighty-three-day sentence, ICE reinstated his prior order of removal. The asylum office conducted a reasonable fear interview with Villa-Najera and determined that there was a reasonable possibility of torture if he was forced to return to Mexico.

---

[1] Although the IJ found Villa-Najera not to be credible, like the BIA, we will assume Villa-Najera to be a credible witness for the purposes of our review and accept his factual statements as true. *See Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009).

Villa-Najera was referred to the immigration court for proceedings, and he applied for withholding of removal and protection under the CAT.

On May 2, 2019, Villa-Najera appeared with counsel before the IJ. Villa-Najera testified during the hearing, explaining the events that led to his fear to return to Mexico and stating that he feared harm based on his political opinion—"anti-gang"—and membership in a particular social group—"Deportee from the U.S. that . . . had rejected gang recruitment after being kidnapped." Villa-Najera also requested that Dr. Jeremy Slack testify as his expert witness to corroborate the status of organized crime in Mexico. The IJ allowed Slack to testify as to the "background conditions in . . . Mexico," but not as to "the credibility of [Villa-Najera] and whether or not [Slack] thinks [Villa-Najera] is likely to suffer persecution or torture upon return to Mexico" because that is a matter strictly for the court.

The IJ issued his decision the same day, denying Villa-Najera's application for withholding of removal and protection under the CAT. The IJ found that Villa-Najera was not a credible witness because he claimed that he was innocent of his prior convictions and was unable to remember how far his hometown was from the United States border. Additionally, the IJ found that Villa-Najera's testimony regarding the woman helping him escape from the cartel was "not believable." The IJ also noted that, even assuming Villa-Najera's testimony was credible, he nevertheless failed to demonstrate that his fears were based on a protected ground or that the Mexican government either acquiesced in or was unwilling or unable to control the actions of the cartels.

Villa-Najera timely appealed the decision of the IJ to the BIA. On October 4, 2019, the BIA dismissed his appeal. The BIA determined that Villa-Najera did not establish that his due process rights were violated by the limitations placed on Slack's testimony because Slack was

allowed to testify as to the country conditions, but did not possess the personal knowledge required to testify as to the credibility or merits of Villa-Najera's claim—a finding based in part on Slack's confusion as to where Villa-Najera was kidnapped. As to his withholding claim, the BIA held that, even assuming that Villa-Najera was credible, his desire to avoid gang recruitment and his claimed social group are not respectively a political opinion or social group cognizable for withholding of removal. Furthermore, the BIA found that Villa-Najera did not meaningfully challenge the IJ's determination that the Mexican government condoned or was helpless to prevent the harm to which Villa-Najera was exposed, and therefore had waived the issue on appeal. Finally, as to his application for protection under the CAT, the BIA held that the IJ's findings— that the Mexican government has been working to combat torture and that Villa-Najera has not demonstrated evidence of a particularized risk of future torture in Mexico—were not clearly erroneous.

Villa-Najera timely petitioned this Court to review the BIA's affirmance of the IJ's denial of his application for withholding of removal and protection under the CAT. Villa-Najera asserts that his due process rights were violated when the IJ declined to qualify Slack as an expert witness and that the denial of his application is not supported by substantial evidence. After filing, Villa-Najera unsuccessfully moved to stay his removal pending our decision on the merits of his petition.

II.

Where, as here, the BIA "issues a separate opinion, rather than summarily affirming the [IJ's] decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "To the extent the BIA adopted the [IJ's] reasoning, however, this Court also reviews the [IJ's] decision." *Id.* We review questions of law de novo. *Id.* Both the IJ's and the BIA's factual findings are reviewed under the substantial evidence standard.

*Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" 8 U.S.C. § 1252(b)(4)(B).

## A. Due Process Rights

Villa-Najera claims that his due process rights were violated when the IJ declined to qualify Slack as an expert witness. "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). To be eligible for relief, however, in addition to the violation, Villa-Najera must also show that he was prejudiced. *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004) (per curiam).

Even if Villa-Najera were able to show a violation, he is unable to show that he was prejudiced by the IJ's decision to limit Slack's testimony. Villa-Najera claims that, if allowed, Slack's testimony would have assisted the IJ based on Slack's "extensive knowledge on Mexican border towns and education on drugs and violence in Mexico and how those returning to Mexico are systematically targeted, based on things such as long periods of time in the United States and strong ties to the United States." But contrary to Villa-Najera's assertion, the IJ permitted Slack's testimony. The IJ found that Slack had "sufficient credentials to provide relevant testimony to the court about conditions in Mexico, and Dr. Slack presented such evidence."

Slack discussed the conditions surrounding criminal organizations in Mexico at length. He addressed the culture of the cartels in Mexico and how they focus on deported individuals, as well as their use of kidnapping. He explained the relationship between the cartels and the Mexican government and how organized crime is allowed to persist. Moreover, he testified as to how the government responds to recent deportees, analyzing the government's control of the harm that

Villa-Najera asserts he will soon face if he is removed to Mexico. Finally, he explained how a cartel may react to someone who refuses their overtures to work for them or had previously escaped their kidnapping. Villa-Najera has failed to show how the excluded testimony is different from the testimony that was offered and how it would have changed the outcome of the IJ's determination. Therefore, Villa-Najera has not shown that he was prejudiced by the limitations placed on Slack's testimony, and he is not entitled to a remand.

## B. Withholding of Removal

To qualify for withholding of removal, Villa-Najera must show that his "race, religion, nationality, membership in a particular social group, or political opinion" is a reason that he will be persecuted if he is removed to Mexico. 8 U.S.C. § 1231(b)(3)(A). "[P]ersecution [is] the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili*, 557 F.3d at 436 (quotations omitted). An applicant must show a "clear probability of persecution" such that "it is more likely than not that the alien would be subject to persecution on one of the specified grounds." *INS v. Stevic*, 467 U.S. 407, 429-30 (1984).

The BIA determined that Villa-Najera waived this claim by failing to meaningfully challenge the IJ's finding of insufficient evidence to conclude that the Mexican government was unwilling or unable to prevent the harm Villa-Najera fears. The BIA also considered the merits of Villa-Najera's argument in the alternative, holding that Villa-Najera failed to demonstrate that the Mexican government is unwilling or unable to protect him. On appeal before this Court, Villa-Najera fleetingly acknowledges the issue in his opening brief, stating that he raised the issue before the BIA when discussing the IJ's decision not to qualify Slack as an expert. Villa-Najera states that Slack's testimony would have established the Mexican government's inability to protect

Mexican citizens from the cartels. But he fails to address the BIA's alternative holding or respond to the government's forfeiture argument[2] in his reply brief.

Even if we were to consider Villa-Najera's brief discussion of the issue,[3] his undeveloped argument fails to meet his burden of showing that the Mexican government was unwilling or unable to protect him. Asserting error because a witness was not qualified as an expert does not satisfy Villa-Najera's burden of proving that the government is unwilling or unable to control the cartels. Moreover, Slack was in fact allowed to testify to the government's ability to control the cartels, the very information that—if we strain to construct Villa-Najera's argument—he believes would satisfy this dispositive portion of his claim. Other evidence in the record, such as evidence that Villa-Najera never sought assistance from the police and reflecting efforts from the Mexican government to address cartel violence, cuts against Villa-Najera's position, and thus the IJ's denial of his application for withholding of removal is supported by substantial evidence.

### C. Protection Under the CAT

To qualify for protection under the CAT, Villa-Najera must show that "it is more likely than not that he . . . would be tortured if removed to [Mexico]." 8 C.F.R. § 1208.16(c)(2). "Torture is an extreme form of cruel and inhuman treatment, and includes any act by which severe pain or suffering . . . is intentionally inflicted . . . ." *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010) (quotations omitted). The torture must be "with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Unlike an

---

[2] Although the government asserts that Villa-Najera "waived" his argument, it is more accurate to say that he forfeited his argument. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).

[3] *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited]. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)) (first and third alterations in original)).

application for withholding of removal, the persecutor's motivations for torture are irrelevant and need not be based on one of the five protected grounds. *Cruz-Samayoa*, 607 F.3d at 1155 (quotations omitted).

The BIA determined that the IJ's findings were not clearly erroneous and that Villa-Najera failed to demonstrate evidence of a particularized risk of future harm in Mexico or that the government would consent to or acquiesce in his torture. In response, Villa-Najera notes his testimony that the Mexican government could not protect him and points to his kidnapping at the bus station when police officers did nothing to prevent it.

Villa-Najera has not demonstrated that it is more likely than not that the Mexican government would consent to or acquiesce in his torture if he were removed to Mexico. The IJ considered his testimony as to the police presence at the bus stop where he was kidnapped, but determined that the evidence does not support a conclusion that the Mexican government tolerates its officials engaging in torture. Villa-Najera has not attempted to challenge this finding. Moreover, Villa-Najera has not claimed that he reported the incident to the police, and there is no record as to whether they would consent to or acquiesce in any potential future harm. This isolated incident is insufficient to establish the requisite link that it is more likely than not that a person acting in an official capacity in Mexico will consent to or acquiesce in the torture of Villa-Najera if he is removed to Mexico. Therefore, the IJ's denial of Villa-Najera's application for protection under the CAT is supported by substantial evidence.

## III.

For the foregoing reasons, we **DENY** Villa-Najera's petition.