# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3748

MARGARITA URIOSTEGUI,

*Petitioner*,

v.

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

———————

Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A70-560-275

———————

ARGUED OCTOBER 5, 2004—DECIDED JULY 15, 2005

———————

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Margarita Uriostegui, a 32-year-old Mexican national, entered the United States illegally before the end of 1990. The following year, her father, who was lawfully in the United States, applied on her behalf for an immigrant visa then available to unmarried children of lawful permanent residents. Years passed. Finally, in July 2000, while Uriostegui continued to wait for the final word on her 1991 visa application, the then-INS commenced removal proceedings. Uriostegui was scheduled to appear at

two master hearings in 2001, but she obtained continuances both times. She failed to appear at the third scheduled hearing, however, which was set for June 2002, and the Immigration Judge (IJ) accordingly entered an *in absentia* removal order.

The judge later denied her timely motion to reopen, and she appealed that decision to the Board of Immigration Appeals (BIA). While the appeal was pending, she filed an original motion with the BIA asking that her case be remanded to an IJ so that new evidence could be considered. The BIA summarily affirmed the IJ's decision denying her motion to reopen, without adding any reference to her separate motion to remand. Uriostegui now petitions this court for review. Although we conclude that the BIA acted within its discretion to reject her motion to reopen, we have no way of reviewing on this record the agency's disposition (if there was one) of her motion to remand. We therefore grant her petition to that limited extent and return this matter to the BIA for further proceedings.

# I

Uriostegui was born in Mexico in December 1972, but she has been living in the United States ever since she entered without inspection some time before the end of 1990. (On her immigration documents, she has given the year of entry as both 1988 and 1990. It seems that she may have returned to Mexico briefly in 1989 and then re-entered the United States for good in 1990. The precise date makes no difference for our purposes.) Her parents also made their way to the United States. Her father, Alvaro Uriostegui, received lawful permanent resident status in December 1990, and her mother, Francisca Uriostegui, did so in August 1996.

Uriostegui herself attempted to follow in her father's footsteps. In October 1991, her father applied on her behalf

for an immigrant visa that would allow her, as his unmarried child, to take advantage of his legal status. INS correspondence identifies Uriostegui's preference category as "LB" (child of a legalization beneficiary) in early 1992, and as "F2B" (unmarried child of a permanent resident) in late 1999. It seems, therefore, that she was not making any effort to keep her presence in the United States a secret from the authorities.

Nothing much seems to have happened with Mr. Uriostegui's application between 1991 and 1999. In February 1999, however, Uriostegui rocked the boat by applying for a change in status. It is difficult to discern the basis for her request from the nearly illegible application copy in the record, but it seems that she checked a box indicating "married" on the form and that she stated that she had two children, one born in 1992 and the other in 1993. This application was denied in September 1999, and that action prompted the INS in July 2000 to send Uriostegui a Notice to Appear formally initiating removal proceedings, on the ground that she was an alien "present in the United States without being admitted or paroled." See Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).

Uriostegui received notice by mail of her first master hearing, which was scheduled for April 4, 2001. She apparently attended that hearing, and the IJ granted her a continuance to October 3, 2001. Her counsel then filed a "Motion to Extend Filing Date of Adjustment of Status Application," which requested a continuance of the October hearing to give Uriostegui "time to file her application for adjustment status based on an approved I-130 with a priority date of 10/31/91." Counsel later received notice, again by mail, that the October hearing was rescheduled for December 19, 2001. Uriostegui appeared at that hearing and received another continuance; her lawyer was personally served at that time with a new Notice to Appear

instructing Uriostegui that her hearing date was June 12, 2002. The record does not reveal whether Uriostegui herself received personal service of that notice. Boilerplate in the Notice to Appear indicates that she would have been told about its contents orally in Spanish, her native language. June 12 arrived, but Uriostegui did not show up at the hearing. Ready to resolve the case, the IJ entered an *in absentia* order of removal, designating Mexico as the country of removal. See INA § 240(b)(5)(A); 8 U.S.C. § 1229a(b)(5)(A).

Immediately after the removal order was entered, Uriostegui began the process of trying to undo its effects. In July 2002, she timely filed a "Motion to Vacate In Abstentia [*sic*] Order of Removal" with the IJ. She did not dispute the fact that she had been notified orally, in Spanish, about the June 12 hearing date. Instead, she asserted that she had misheard the word "junio" (June, in Spanish) and thought that the speaker had said "julio" (July). She did not claim, however, that her lawyer had failed to give her the written notice of the June hearing date.

At almost the same time, on June 24, 2002, Uriostegui filed an "Application for Cancellation of Removal and Adjustment of Status" with the Executive Office for Immigration Review, which is the component of the Department of Justice that encompasses the BIA and immigration court. See *Balogun v. Ashcroft*, 374 F.3d 492, 494 n.1 (7th Cir. 2004). The application claims that Uriostegui's removal to Mexico will "result in exceptional and extremely unusual hardship" to her parents and children. The only reason for this assertion was that her children would not return with her to Mexico. As Uriostegui put it, "[m]y children are U.S. Citizens. They can receive better education and health care in here, than in a place that I may be deprted [*sic*] to." The record does not disclose what happened to this application.

The IJ decided to treat Uriostegui's motion to vacate as a motion to reopen the proceedings. On that assumption, he

denied it. Uriostegui's "misunderstanding of the date of her final hearing," he concluded, did not amount to the exceptional circumstances required to justify reopening her case. See INA § 240(b)(5)(C)(i), 8 U.S.C. § 1229a(b)(5)(C)(i). Uriostegui filed an appeal to the BIA in October 2002 from the IJ's order denying her motion to reopen; she did not appeal from the order of removal itself. In March 2003, while the appeal was pending, she also presented a motion to the BIA seeking a remand to the IJ on the ground of new evidence. She was referring to the fact that after her removal order was entered, the State Department had announced that it was still processing F2B visas with priority dates both before and after hers (which, recall, was in 1991). She interpreted the State Department's public announcements as indicating that her application would have been processed, if not for the IJ's removal order, and thus that she should be eligible for a change in status to lawful permanent resident. We do not know what the BIA thought of these particular arguments. It resolved Uriostegui's appeal with an order stating, "The Board affirms, without opinion, the results of the decision below. The decision is, therefore, the final agency determination. See 8 C.F.R. § 1003.1(3)(4)." It made no reference to the separate motion to remand that was before it.

## II

Before this court, Uriostegui argues that the BIA erred by refusing to find that her misunderstanding of the month in which her hearing was to occur was not an exceptional circumstance that excused her failure to appear on June 12, 2002, by failing explicitly to address her motion to remand, and by implicitly holding that her evidence indicating that her priority date was still valid was not "new." We address these points in turn.

### A

Because the BIA used its summary "affirm[ance] without opinion" procedure, we review the IJ's decision directly. *Vladimirova v. Ashcroft*, 377 F.3d 690, 695 (7th Cir. 2004). We review a decision not to reopen the proceedings for abuse of discretion. *Ursachi v. INS*, 296 F.3d 592, 594 (7th Cir. 2002). When the alien is trying to reopen a removal order issued *in absentia*, three issues are relevant: (1) the validity of the notice provided to the alien; (2) the reasons for the alien's failure to attend the proceedings; and (3) whether the alien is removable. 8 U.S.C. § 1229a(b)(5)(D); see *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999). Uriostegui has focused on the second issue; she argues that her misunderstanding of the date conveyed to her by the Spanish interpreter entitles her to reopen her case.

We assume, for purposes of this opinion, that Uriostegui really did mishear the name of the month uttered by the interpreter. Even so, this mistake falls short of the exceptional circumstances that have excused nonappearance in other cases. It is nowhere near the illustrative examples given in the statute, which include serious illness of the alien, serious illness or death of a spouse, child, or parent, and other circumstances "not less compelling." INA § 240(e)(1), 8 U.S.C. § 1229a(e)(1). See also *Celis-Castellano v. Ashcroft*, 298 F.3d 888, 891-92 (9th Cir. 2002); *Matter of W-F-*, 21 I.&N. Dec. 503, 509 (BIA 1996) (BIA uses totality of the circumstances test for exceptional circumstances). General claims of illness, even when supported by a doctor's note, have been found not to be sufficient. See *Ursachi, supra*, 296 F.3d at 594. Car troubles—surely a perennial issue—have also been rejected. *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir. 1996).

Uriostegui has tried to equate her problem with the severe interpretation dilemma faced by the petitioner in *Nazarova, supra.* But in that case, the INS itself was partly

at fault for leading Nazarova to believe that she would have an interpreter and then failing to live up to its word, and Nazarova's lateness was attributable to her efforts to ensure that her hearing would be a meaningful one (that is, one that would be comprehensible to her). Uriostegui's case is far different. She was represented by counsel, and there is no hint that the lawyer was unaware of the correct date. She knew that Spanish interpretation would be available, because she had availed herself of that service all along. Consequential as the error was for her, there is nothing exceptional about it. She could have double-checked the date after the hearing when it was set, or she could have left instructions with her attorney to call her a day or two before the hearing to make sure that all necessary preparations were in place. Even if it might have been within the IJ's discretion to grant her motion to reopen, it was not an abuse to deny it on this basis.

**B**

More troubling is the BIA's failure to acknowledge the motion to remand that was pending before it. For all anyone knows, the BIA may not even have considered the motion, which is separate from the appeal that was addressed in the boilerplate summary affirmance order reciting the language set forth in 8 C.F.R. § 1003.1(e)(4)(ii). Second, the BIA's failure to give any reason for (implicitly) rejecting the motion may violate the BIA's own procedures. Finally, the BIA's silence is in considerable tension with the agency's duty to support its judgment with a reasoned decision. See *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000).

We recognize that our review of the BIA's denial of a motion to remand is once again only for abuse of discretion. See *Boykov v. Ashcroft*, 383 F.3d 526, 529-30 (7th Cir. 2004). The procedure for affirming IJ decisions without opinion is not authorized in so many words for cases in which an original motion to reopen filed directly with the

BIA has been consolidated with an existing appeal. See **8 C.F.R. § 1003.2(c)(4)**. The lawyer for the BIA skips over this problem, suggesting instead either that we can presume that the motion was necessarily denied or that we can find that the error in failing to address it or discuss it was harmless.

Our basic problem with counsel's first suggestion— that we consider the motion "necessarily denied"—is that we have no evidence that the BIA gave it any thought at all. The opinion of the IJ that the single Board member affirmed without opinion dealt with an entirely different set of circumstances: the *in absentia* order, Uriostegui's confusion about "junio" and "julio," and the hardship on her children if the case was not reopened. Her motion to remand, in contrast, focused on the 1991 priority date she claimed from her father's old F2B visa application, in which he was trying to regularize her status because she was the unmarried child of a permanent resident. Normally, we are able to give meaningful review to the BIA's summary affirmances because we can discern the reasoning behind the result from the IJ's opinion. See *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003). Here, to paraphrase Gertrude Stein, there is no "there" there. We have absolutely no findings of fact or conclusions of law from anyone connected with the immigration agency (as opposed to counsel before this court) to explain why Uriostegui's motion to remand was rejected. Under these circumstances, it is also impossible for us to know whether this is an appropriate place to find harmless error. We note, finally, that it is not clear from the BIA's regulations whether a motion to remand is the type of matter that may be resolved by a single member of the Board rather than a three-member panel. We express no opinion on this point, because we regard it as a matter for the BIA to address in the first instance.

## C

Uriostegui has also asked us to address the merits of her motion to remand. It would inappropriate, however, for us to do so. It is the BIA's responsibility to evaluate new evidence claims in the first instance, and it has considerable discretion in that process. We have no idea, as things presently stand, whether Uriostegui is married or not, whether she is eligible for this visa or not, what legal relevance her initial priority date may continue to have for this purpose, and so on. The BIA can resolve these questions and provide a reasoned explanation for its ultimate decision. Some of these matters may ultimately lie within the Board's unreviewable discretion; others may implicate legal decisions. It is simply too early for this court to act.

## III

For these reasons, we DENY the petition for review from the BIA's order summarily affirming the denial of the motion to reopen, but we GRANT the petition for review that relates to the motion to remand that Uriostegui filed with the BIA and we return this case to the BIA for further proceedings.

**A true Copy:**

      **Teste:**

                       _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*