*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0430p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————————

KWASI ACQUAAH,

        *Petitioner,*

    *v.*

ERIC H. HOLDER, JR., Attorney General,

        *Respondent.*

No. 08-3836

On Petition for Review from a Final Order
of the Board of Immigration Appeals.
No. A79 669 319.

Submitted: December 3, 2009

Decided and Filed: December 18, 2009

Before: SILER, GILMAN, and ROGERS, Circuit Judges.

—————————————

**COUNSEL**

**ON BRIEF:** Ilissa M. Gould, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Kwasi Acquaah, Oakdale, Louisiana, pro se.

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge. Kwasi Acquaah, a native and citizen of Ghana, appeals a decision by the Board of Immigration Appeals (BIA) denying two separate motions to reopen his removal proceedings. An Immigration Judge (IJ) ordered Acquaah removed *in absentia* when Acquaah failed to appear at his master-calendar hearing due to a mistaken belief as to the proper hearing date. For the reasons set forth below, we **DENY** Acquaah's petition for review.

1

# I.  BACKGROUND

## A.     Factual background

Acquaah was admitted to the United States in January 2000 as a nonimmigrant student to attend the University of Arkansas.  When Acquaah stopped attending school the following year, the Immigration and Naturalization Service issued him a Notice to Appear.  The Notice informed Acquaah that he was subject to removal from the country for failing to comply with the conditions of his nonimmigrant status.  Following various delays not relevant to this appeal, the IJ sent Acquaah notice that he was scheduled for a telephonic master-calendar hearing on July 5, 2005.

Acquaah failed to appear at the office of his attorney, Robert D. Klock, to participate in the scheduled telephonic hearing and, as a result, the IJ ordered that Acquaah be removed from the country *in absentia*.  Although Acquaah acknowledges that he received proper notice that the hearing was to be held on July 5, he mistakenly believed it to be on July 7.  To support his claim, Acquaah produced evidence that he had requested time off from work on July 7 so that he could participate in the hearing.

Acquaah did not discover that he had missed his court appearance until he went to Klock's office on July 7.  According to Acquaah, Klock stated that he would promptly file a motion to reopen Acquaah's removal proceedings and that the motion would likely be granted.  Acquaah represents that he agreed to pay Klock $1,000 to file the motion, and that he contacted Klock multiple times in the following months to inquire as to the status of his case.  Unbeknownst to Acquaah, Klock never filed the motion.  In response to Acquaah's inquiries, Klock purportedly remarked that no new hearing date had been set and that the immigration court "was very slow in processing cases."

Almost two and a half years later, in December 2007, U.S. Immigration and Customs Enforcement agents took Acquaah into custody.  Ginger Tully, Acquaah's fiancée, then contacted Klock, who accepted a $2,000 down payment in exchange for his assistance in getting Acquaah out of prison and for filing a motion to reopen the removal proceedings.  Unhappy with Klock's representation, Tully gave Klock notice on January 9, 2008 that she had hired another attorney to handle Acquaah's case.  That attorney, Laura Ferner, sent

Klock notice on January 17, 2008 that she intended to file a motion to reopen on Acquaah's behalf and assert that Klock had rendered ineffective assistance as Acquaah's counsel.

**B.        Procedural background**

In January 2008, two motions to reopen were filed on Acquaah's behalf. Klock, despite receiving notice that Acquaah had new counsel, filed the first motion on January 23, 2008. The motion detailed Acquaah's mistaken belief as to the hearing date and noted his family connections to the United States. Shortly thereafter, on January 30, 2008, Ferner filed the second motion to reopen, asserting that Klock had rendered ineffective assistance of counsel by misrepresenting his intent to file a motion to reopen shortly after the July 5, 2005 hearing date.

The IJ denied both motions, finding, among other things, that Acquaah's mistake as to the correct date of the master-calendar hearing was not an "exceptional circumstance" warranting reopening, and that the motions to reopen were now time-barred. On appeal, the BIA agreed with the IJ's conclusion that Acquaah had failed to demonstrate that any exceptional circumstance existed that prevented him from participating in the master-calendar hearing. The BIA further reasoned that, in the absence of such a circumstance, it need not address whether Klock's assistance as Acquaah's counsel was ineffective. This timely appeal, filed by Acquaah pro se, followed.

## II. ANALYSIS

**A.        Standard of review**

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). We review the denial of a motion to reopen under the abuse-of-discretion standard. *Bi Feng Liu v. Holder*, 560 F.3d 485, 489 (6th Cir. 2009). An abuse of discretion exists where the denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id*. at 490 (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)). Legal determinations made by the BIA are reviewed de novo. *Id*.

**B.       Discussion**

Failure to appear at a removal proceeding carries the severe consequence of deportation. *See* 8 U.S.C. § 1229a(b)(5)(A) (stating that an alien who receives notice of a removal proceeding but fails to appear "shall be ordered removed in absentia if the [government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable"). An order of removal due to an alien's failure to appear may be rescinded, however, "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). Such exceptional circumstances include "battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances," and they must be "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). "An IJ considers the totality of the circumstances when making a determination that exceptional circumstances exist." *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003).

As an initial matter, we note that both motions to reopen were filed well outside the 180-day time limit prescribed by statute. But Acquaah argues that this time bar should be equitably tolled in light of Klock's ineffective assistance. This court has indeed applied the doctrine of equitable tolling to motions to reopen removal proceedings. *See Barry v. Mukasey*, 524 F.3d 721, 724-25 (6th Cir. 2008) (recognizing the doctrine, but declining to apply it where the petitioner neglected to contact her attorney for one year following the BIA's dismissal of her appeal, and thereby "failed to exercise due diligence in pursuing her rights"). Here we agree with the BIA that even if Acquaah's motions were found to be timely, he would still not be entitled to relief because, as explained below, he has not shown that he missed his hearing due to exceptional circumstances.

Acquaah does not dispute that he had proper notice of the hearing date and does not allege that he was ill or in custody at the time of his hearing. Rather, he asserts that had Klock promptly filed a motion to reopen—which Klock allegedly told Acquaah he had done—the motion would have been granted. The key issue on appeal is thus whether Acquaah's good faith but mistaken belief as to the correct date qualifies as an exceptional

circumstance. Although this court has not yet determined what constitutes an exceptional circumstance where an alien has received proper notice of a removal hearing, other circuit courts have set a high threshold and are disinclined to view misunderstandings and communication errors as being sufficient. *See, e.g.*, *Dominguez-Capistran v. Gonzales*, 438 F.3d 876, 877-78 (8th Cir. 2006) (determining that an attorney's "poor calendaring and failure to personally remind" the alien of her hearing date was not an exceptional circumstance); *Uriostegui v. Gonzales*, 415 F.3d 660, 663-64 (7th Cir. 2005) (holding that an alien's misunderstanding as to the correct month of her hearing as told to her in Spanish, her native language, by an interpreter was not an exceptional circumstance); *Thomas v. INS*, 976 F.2d 786, 788-90 (1st Cir. 1992) (affirming the denial of motion to reopen where an alien appeared ten minutes late at a hearing because he and his attorney had "crossed signals" about where to meet); *but see Barseghian v. INS*, 14 F. App'x 806, 807 (9th Cir. 2001) (holding, in a two-page unpublished opinion without supporting caselaw, that exceptional circumstances existed where an alien misunderstood a court interpreter to say that his hearing date was a week later than the date of the actual hearing).

Notwithstanding this general trend, the United States Court of Appeals for the First Circuit found "exceptional circumstances" to exist in a situation with certain similarities to Acquaah's. In *Kaweesa v. Gonzales*, 450 F.3d 62 (1st Cir. 2006), Kaweesa, an alien representing herself pro se, "inadvertently mistook" her May 13, 1999 hearing date for May 17, 1999. *Id.* at 70. Like Acquaah, Kaweesa had arranged her schedule so as to be off work on the wrong date. *Id.* But Kaweesa, unlike Acquaah, promptly contacted the court on May 17 regarding her error and then filed a motion to reopen two days later. *Id.* at 64, 70. In light of this effort and the severe consequences that Kaweesa allegedly faced if deported, the court held that she had demonstrated the existence of an exceptional circumstance and that the IJ had committed an error of law by denying her motion to reopen. *Id.* at 71.

We find that the scenario presented to the First Circuit in *Kaweesa* is sufficiently distinguishable from the present case to call for a different outcome. To begin with, the court in *Kaweesa* emphasized the need to conduct a totality-of-the-circumstances analysis, and it highlighted Kaweesa's claim under the Convention Against Torture in which she alleged that she would face rape and torture if deported to Uganda. *Id.* at 68-70. Acquaah,

in contrast, has not made any claim that he would be subject to persecution if removed to Ghana. (To be sure, whether an alien's likely treatment in his or her home country should even be considered when reviewing the denial of a motion to reopen is an unresolved issue, an issue that we have no need to explore due to its inapplicability in the case before us.)

Moreover, the *Kaweesa* court noted that Kaweesa took immediate and affirmative action following her court date by contacting the court directly and promptly filing a motion to reopen. *Id*. at 70. Unlike Kaweesa, there is no evidence that Acquaah tried to contact the court directly regarding the status of his case at any point during the two-and-one-half years following the missed hearing. *See Kasyupa v. Keisler*, 252 F. App'x 106, 109 (8th Cir. 2007) (distinguishing *Kaweesa* because of the alien's "failure to remain active in the immigration proceedings," including his failure to remain in contact with his attorney or inquire of the court regarding the status of his I-130 petition).

Acquaah, unlike Kaweesa, had an attorney, but other than intermittently checking in with Klock, Acquaah was disengaged from his removal proceedings for the two-and-one-half years prior to his being taken into custody. Exemplifying this disengagement is the fact that Acquaah never even requested a copy of the motion that Klock supposedly filed with the immigration court shortly after the missed hearing. At some point during this long period of time, we find that Acquaah's blind reliance upon Klock's representations became unreasonable. *Cf. Uriostegui*, 415 F.3d at 664 (observing that an alien who was represented by counsel was not absolved of responsibility for a missed hearing date because she "could have double-checked the date after the hearing when it was set, or . . . could have left instructions with her attorney to call her a day or two before the hearing to make sure that all necessary preparations were in place").

In addition to *Kaweesa* being distinguishable, the weight of authority generally, as noted above, holds that a mistaken belief as to the correct hearing date does not rise to the level of being an exceptional circumstance. Acquaah has not shown that his mistake as to the correct date for the hearing was in any way beyond his control or of an extraordinary nature comparable to the exceptional circumstances specified by statute. *See, e.g.*, *Kasyupa*, 252 F. App'x at 108 (holding that an alien's mistaken belief that he no longer needed to keep his address current was not an exceptional circumstance because "[i]t was not beyond [his]

control" that his address on file was inaccurate); *Chen v. INS*, 85 F. App'x 223, 226 (2d Cir. 2003) (finding no exceptional circumstance where the alien failed to allege that the traffic jam was "of such a severe and extraordinary nature that [the alien] could not reasonably have been expected to account for such an eventuality"). This point is further supported by the Supreme Court's recognition that "[t]here is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases." *INS v. Abudu*, 485 U.S. 94, 107 (1988).

Acquaah's mistake as to the correct date of his hearing had severe consequences, but it was a "less compelling circumstance[]" than that required for relief under 8 U.S.C. § 1229a(e)(1). Because Acquaah cannot make this requisite showing, we need not address Acquaah's arguments regarding Klock's alleged ineffective assistance of counsel that occurred after the fact, nor do we have to consider whether the filing period for the motions to reopen should have been equitably tolled. The IJ, in other words, would not have abused his discretion in denying a motion to reopen even if Acquaah's attorney had promptly filed such a motion several days after July 5, 2005.

## III.  CONCLUSION

For all of the reasons set forth above, we **DENY** Acquaah's petition for review.