NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0510n.06

No. 09-4566

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

***Jul 22, 2011***

LEONARD GREEN, Clerk

KIAN HAU NG,

          Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

          Respondent.

ON APPEAL FROM THE BOARD OF IMMIGRATION APPEALS

**OPINION**

Before:  SUTTON and WHITE, Circuit Judges; STAFFORD, District Judge.[*]

**HELENE N. WHITE, Circuit Judge.**  Kian Hau Ng (Ng), an ethnic Chinese citizen of Indonesia, petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming the denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Ng challenges only the BIA's denial of his application for withholding of removal.  We AFFIRM the BIA's decision and deny Ng's petition for review.

**I.**

Ng was admitted to the United States on August 5, 2001, as a non-immigrant visitor with authorization to remain for a temporary period not exceeding March 4, 2002.  On March 21, 2007, the Immigration and Naturalization Service (INS) served Ng with a Notice to Appear (NTA) that

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

1

charged him with being subject to removal pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1227(a)(1)(B).

On August 21, 2007, following several continuances, Ng appeared before the Immigration Judge (IJ) with counsel, conceded removability, declined to designate a country of removal, and informed the IJ of his desire to apply for asylum, withholding of removal, and any related relief. The IJ sustained the charges in the NTA and designated Indonesia as the country of removal. On October 9, 2007, Ng filed applications for asylum, withholding of removal, and protection under the CAT.

At a merits hearing on March 6, 2008, Ng conceded that his asylum application was untimely and agreed that the only issue before the IJ was his eligibility for withholding of removal. Ng stated that he feared returning to Indonesia because there was often "fighting between tribes and ethnicities" and he was once "assigned to night patrol and there was fighting between the Dayaks and Maduras." He explained that the patrol consisted of residents patrolling the neighborhood, and did not involve the military or the police. Ng asserted that he was "in the middle of this warfare between the Dayaks and Maduras . . . because of [his] ethnicity," that "the possibility that war will happen again is very great," and that he was not sure whether the Indonesian government was willing or able to protect him. He admitted that he had "never been attacked personally," but that he had "done some night patrols . . . [and] witnessed the house[s] burning, the looting, heads rolling in the streets." He also acknowledged that he had not experienced any problems aside from the single neighborhood patrol incident.

At the conclusion of the hearing, the IJ rendered an oral decision denying Ng's claims for asylum and withholding of removal. In the subsequently-issued written decision, the IJ noted as an initial matter that Ng's counsel stated that there were no changed country conditions or extraordinary circumstances that would excuse the untimeliness of Ng's asylum application, and consequently the IJ would consider only Ng's application for withholding of removal.

The IJ concluded that Ng was not eligible for withholding of removal because he did not show a clear probability of persecution if he were returned to Indonesia. According to the 2006 Country Report for Indonesia, the civil strife that Ng allegedly feared was over. Further, the IJ found that the civil strife did not involve Ng except to the extent that he observed the result of it, as he failed to show that he was persecuted due to his Chinese ethnicity. Additionally, the IJ found that Ng failed to show that the persecution that he allegedly feared existed nationwide. The IJ also determined that Ng was not eligible for CAT protection because he had "demonstrated absolutely nothing to show that he was tortured in the past in Indonesia or that he would be tortured by the government of Indonesia or with the acquiescence of the government of Indonesia."

On April 7, 2008, Ng appealed the IJ's decision to the BIA. The notice of appeal alleged that the IJ erred in finding that Ng did not have a well-founded fear of persecution upon returning to Indonesia based on "the bombings in Indonesia," and that the IJ did not give sufficient weight to the evidence submitted regarding "the 2002 bombings in Bali by radical Muslim extremists." Ng did not file additional documents in support of the appeal.

The BIA affirmed the IJ's denial of Ng's asylum application because it was untimely and Ng failed to establish changed or extraordinary circumstances excusing the late filing. The BIA also agreed with the IJ that Ng failed to establish eligibility for withholding of removal, determining that the incident in question did not rise to the level of persecution, and that Ng had not established a clear probability of future persecution based on any incident that had a nexus to a protected ground under the Act. Specifically, the BIA found that Ng was merely a witness to ongoing civil strife between two ethnic groups, to neither of which he belonged. The BIA noted that there was no evidence that Ng was persecuted due to his Chinese ethnicity. With respect to Ng's application for protection under the CAT, the BIA found that Ng did not demonstrate that it was more likely than not that he would face torture by or with the acquiescence of the Indonesian government upon returning to that country. Ng petitions for review of the BIA's dismissal of his appeal.

**A.**

As a threshold matter, the Government argues that we lack jurisdiction to review Ng's withholding-of-removal claim because Ng does not specifically challenge the bases of the BIA's decision, relying on *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (noting that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citations and internal quotations omitted).

We disagree. Ng's appellate brief argues that the IJ's denial of his application for withholding of removal, which was affirmed by the BIA, was erroneous because the ruling was predicated "on an unreasonably narrow view of what constitutes persecution" – that "the wound must

be caused by direct fire from the persecutor." He also contends that he established a well-founded fear of future persecution based on being assigned to night patrol, witnessing violence during the patrol, and given that the warfare between the Dayaks and the Maduras endangered the lives and property of Indonesian citizens of Chinese ethnicity, and the Indonesian government was unable to curb the violence and protect its ethnic Chinese citizens.

**B.**

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009) (citation omitted). We review the BIA's legal conclusions de novo, and its factual findings for substantial evidence; factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011); 8 U.S.C. § 1252(b)(4).

To establish eligibility for withholding of removal, an applicant must demonstrate that he faces a "clear probability" of "persecution" based on his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010). The "clear probability" standard is more demanding "than the 'reasonable possibility' standard for obtaining asylum because it requires the applicant to show that 'it is more likely than not' that his life or freedom would be threatened by persecution if he returned to his home country." *Pablo-Sanchez*, 600 F.3d at 594 (citation omitted).

Persecution is defined as "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (citation omitted). We have held that persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). "[T]he applicant must establish that he or she was specifically targeted by the government for abuse based on one of the statutorily protected grounds. If the applicant can make this showing, then the court should consider whether the applicant was subjected to physical harm and suffering or simply verbal threats and intimidation, and the gravity of the circumstances presented." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005).

With respect to his withholding-of-removal claim, Ng alleges past persecution based solely on the patrolling incident where he observed violence between two ethnic groups, but did not suffer physical harm. This single incident does not constitute persecution. *See Darwis v. Holder*, 349 F. App'x 984, 987 (6th Cir. 2009) (holding that a Madurese Indonesian did not establish past persecution due to 2001 regional violence between the Dayak and Madurese ethnic groups because he did not suffer harm and merely witnessed civil strife). Moreover, Ng is not a member of either the Dayak or Madurese ethnic groups, and there is no evidence in the record that Chinese Indonesians were targeted by either of these two groups for persecution. Therefore, Ng fails to demonstrate that he experienced past persecution and is not entitled to a presumption of a well-

founded fear of future persecution.  8 C.F.R. § 208.13(b)(1) (applicant who proves past persecution merits presumption of a well-founded fear of future persecution).

Concerning the likelihood of future persecution, as the IJ observed, the 2006 Country Report indicates that despite the tensions between the Dayaks and the Maduras, many displaced Madurese have returned to their homes and local elections were orderly and relatively peaceful.  Further, even if there is ongoing violence between the two ethnic groups that would affect Ng, he could relocate to other regions of Indonesia, as there is no evidence that the persecution he allegedly fears exists nationwide.  Because Ng has failed to show that it is more likely than not that his life or freedom would be threatened by persecution if he returned to Indonesia, he has not established a well-founded fear of future persecution and thus is ineligible for withholding of removal.

**II.**

For these reasons, we **AFFIRM** the BIA and deny Ng's petition for review.