NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0614n.06

No. 09-3157

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 24, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DOUSSOU HADJIRATOU KABA, | ) | ON APPEAL FROM THE |
| | ) | BOARD OF IMMIGRATION |
| Petitioner, | ) | APPEALS |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | **OPINION** |
| Respondent. | ) | |
| _____ | ) | |

**Before: WHITE and STRANCH, Circuit Judges, and COHN,[*] District Judge**.

**HELENE N. WHITE, Circuit Judge.** Doussou Hadjuratou Kaba (Kaba), a native and

citizen of Guinea, seeks asylum, withholding of removal, and protection under the Convention

Against Torture (CAT). The Immigration Judge (IJ) and the Board of Immigration Appeals (BIA)

denied Kaba's applications. Kaba seeks review of the BIA's decision. We **AFFIRM**.

**I.**

Kaba entered the United States on April 1, 2000. She filed her asylum application with the

Department of Homeland Security (DHS) on April 2, 2003. In her application, Kaba alleged that

she "spent 13 months in jail," during which time she was "raped [and] injured," and that when she

was released from jail she "was ordered to move out of the country." Kaba stated that she believed

_____

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

-1-

she was arrested and jailed because she was an active member of "Alpha Konse's party." She claimed that she was afraid of being subjected to torture if returned to Guinea because "[t]he same government which sent [her] away, which tortured [her], [was] still there . . . ."

On March 3, 2004, the DHS issued a Notice to Appear (NTA) charging Kaba with removability under section 237(a)(1)(A) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(A). Kaba appeared with counsel before an IJ in Arlington, Virginia, conceded removability, and stated that she was seeking asylum, withholding of removal, and protection under the CAT.

On April 12, 2007, following several continuances and at least one failure to appear,[1] Kaba appeared at her merits hearing without counsel. The IJ observed that Kaba had been represented by two successive attorneys, that her case had "been pending for a long time[,] and [that she] [had] had sufficient time to get a lawyer." As a result, the IJ decided to proceed with Kaba's case. Kaba apparently declined the assistance of an interpreter and testified in English. Before taking Kaba's testimony, the IJ accepted several documents into evidence, including a letter from Kaba's ex-

---

[1]Kaba failed to appear for her first hearing before the IJ on June 15, 2004, and was ordered removed in absentia. On August 27, 2004, Kaba, with the assistance of her first counsel, moved to reopen her proceedings before the Immigration Court. The IJ granted Kaba's motion on September 14, 2004. Kaba's proceedings were then continued until June 16, 2006. On October 15, 2005, Kaba's first counsel withdrew. On May 2, 2006, Kaba, with the assistance of her second counsel, filed a motion for a continuance. Kaba's proceedings were subsequently continued until April 12, 2007. On March 19, 2007, Kaba's second counsel moved to withdraw. The IJ granted this motion on March 29, 2007.

boyfriend, which was typed in English and dated March 30, 2000,[2] a membership card for the "Rassemblement Du Peuple De Guinee" (RPG) party, and a Guinean identification card.

In support of her applications for asylum, withholding of removal, and protection under the CAT, Kaba testified that she was born in Conakry, Guinea on November 11, 1979. She completed high school and attended college for one year. Kaba's parents were deceased, but her stepmother was still alive and residing in Guinea. She also had a nine-year old daughter who was living in Guinea with Kaba's sister. Her daughter's father, who was not the ex-boyfriend referred to in the letter, was living in Europe. Kaba stated that while she lived in Guinea, she did not have to work; her mother owned a great deal of land and some houses, and Kaba and her sister supported themselves by collecting rent for these properties. After Kaba left Guinea, her sister took over the management of their mother's assets.

According to Kaba, she was a "[l]ittle bit" involved in politics in Guinea, and she was a member of the RPG party. Each school had an RPG party group, and she joined her school's group in 1997. Kaba did not hold any official position in the party, and she only attended one party-sponsored event – a meeting in the stadium of Kaba's high school where the president of the RPG was supposed to speak – which occurred at the end of 1999. Between 100 to 200 people attended this meeting, but the police prevented the president of the RPG from speaking and arrested a number of the attendees, including Kaba. Kaba testified that she was "beaten" when she was inside the

---

[2]Kaba explained that she was submitting this letter to show "that it wasn't her plan to come and stay [in the United States]." She said that "I came here because I thought things were going to change after I left so I [could] go back because we were supposed to get married there . . . ."

police truck, stating "when they w[ere] getting me in the truck, they . . . pull[ed] me [by] my feet and two guys, one holding [my] feet [and the other holding my] hand[s,] [threw me] inside the truck where other people[] [were already waiting]."

Kaba testified that she was taken to jail, where she was locked in a cell with nine other women. She stated that she remained in jail for three days, and that she and the other women were treated well during the day, receiving food and water, but not as well during the night-time hours, as the guards were present during that time. Kaba said that on her second night in jail she was raped by a guard. Two guards took her from her cell to the guard-room and one guard raped her while the other guard prevented her from screaming and hit her when she attempted to cry out. Kaba was then brought back to her cell. The following afternoon, she and the other women in her cell were released from jail.

Kaba testified that following her release she had to stay at a friend's house because the home where she had been living with her sister and her daughter had been destroyed by rebels belonging to a different political party.[3] Her sister and daughter went to live with Kaba's stepmother. Kaba stated that she felt humiliated about her rape during this time. Kaba further testified that approximately two months after she was released from jail, in February 2000, she left her friend's house and traveled to Nigeria, where she had a contact who had promised to help her leave Guinea. Upon arriving in Nigeria, Kaba paid the contact's sister to obtain a passport that she could use to

---

[3]Kaba stated that these rebels would destroy houses owned by persons with whose opinions they disagreed, but the relationship between Kaba's RPG party membership and the destruction of her family's home is unclear, as her party participation was minimal and her sister was not an RPG party member.

enter the United States and a plane ticket to the United States. Kaba testified that after spending four days in Nigeria, she returned to Guinea because the ticket she had purchased was for a plane leaving from Conakry.

According to Kaba, on March 31, 2000, she flew out of Conakry and, following several stops, landed in New York. Kaba's passport was checked at the airport, but she was not detained. Kaba testified that the brother of the woman whose passport she had purchased was supposed to pick her up from the airport, but he never came to get her. As a result, Kaba called Alpha Konate (Konate), a high school friend who was attending school in New York, and Konate's uncle picked her up from the airport. Kaba stated that she subsequently lived in New Jersey for seven months before moving to Columbus, Ohio.

In explaining why she waited so long to file her asylum application, Kaba testified that she did not know how to obtain an asylum application, that she was eventually introduced to an unidentified individual whom she paid $150 to obtain an application, and that this individual filled out and signed an application for her. Kaba stated that the allegation in her application that she was in jail for thirteen months was not true, and that the person who filled out her application "was supposed to do what I said but he did not." When asked whether she had a fear of returning to Guinea, Kaba responded "[f]or now, yes," explaining that "the government is still there. . . .They destroy everything you have." Kaba also stated "I'm not asking to stay permanently in [the United States]. I'm just asking permission to stay until things change in my country."

Following Kaba's testimony, the IJ rendered an oral decision denying Kaba's applications for asylum, withholding of removal, and protection under the CAT. In a written decision, the IJ

found Kaba not credible based on the inconsistencies between her testimony and the information in her asylum application and her ability to speak and write English and her claim that someone else filled out her application. The IJ also determined that Kaba's asylum application was untimely, that she did not present any evidence of changed circumstances or extraordinary circumstances, and that ignorance of the filing deadline was no excuse. Further, the IJ stated that Kaba did not present credible evidence or corroborating evidence when it was available in support of her asylum application. Lastly, the IJ found that Kaba failed to meet her burden of proving past persecution or a well-founded fear of future persecution with respect to her asylum application. Based on this finding, the IJ determined that Kaba failed to satisfy the higher standard required for withholding of removal. The IJ also concluded that Kaba failed to present any evidence that it was more likely than not that she would be tortured if forced to return to Guinea.

Kaba timely appealed the IJ's decision to the BIA with the assistance of counsel. On January 22, 2009, the BIA dismissed the appeal. The BIA adopted and affirmed the IJ's conclusion that Kaba's asylum application was time-barred – a conclusion that Kaba had not challenged on appeal. It also found that the IJ's adverse credibility determination was not clearly erroneous. Thus, the BIA concluded that even if Kaba's asylum application was timely, she had not met her burden of establishing eligibility for asylum or "the higher standard regarding her claim for withholding of removal." Finally, the BIA agreed with the IJ that Kaba was ineligible for protection under the CAT. Kaba seeks review of the BIA's decision.

**II.**

Kaba argues that the IJ and the BIA erred in finding that (1) her testimony was not credible; (2) she did not sufficiently corroborate her persecution with credible evidence; and (3) she did not establish a well-founded fear of future persecution. The government, in turn, claims that Kaba has (1) failed to exhaust her administrative remedies regarding the IJ's decision that her asylum application was untimely; (2) waived her claim for protection under the CAT; and (3) failed to show that the record evidence compels a conclusion contrary to the IJ's and the BIA's adverse credibility finding, which was the basis for denying Kaba's withholding of removal claim.

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009) (citation omitted). "We review the IJ's and BIA's findings for substantial evidence and may reverse only if the decision was 'manifestly contrary to law,' that is, if the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1149 (6th Cir. 2010) (citations omitted) (emphasis in original).

**A.**

The INA "requires that an asylum applicant 'demonstrate[ ] by clear and convincing evidence that [her asylum] application [was] filed within 1 year after the date of [her] arrival in the United States.'" *Vincent v. Holder*, 632 F.3d 351, 352 (6th Cir. 2011) (citing 8 U.S.C. § 1158(a)(2)(B)). "This requirement is subject to exceptions in cases where the 'alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within' the required one-year period." *Id.* at 352-53 (citing 8 U.S.C. § 1158(a)(2)(D)).

Section 1158 also "creates a jurisdictional bar to review of the timeliness issue: '[n]o court shall have jurisdiction to review any determination of the Attorney General' regarding whether changed or extraordinary circumstances exist to excuse the filing of an asylum application beyond one year after [the alien's] arrival in the United States." *Id.* at 353 (citing 8 U.S.C. § 1158(a)(3)). However, this bar applies "only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Id.*

Kaba contended that her asylum application was two years late because she did not know where to obtain the application, indicating that she was ignorant of the one-year filing deadline. The IJ found that Kaba did not present any evidence of changed or extraordinary circumstances, and ignorance of the filing deadline was no excuse. As the BIA pointed out, Kaba, who was represented by an attorney before the BIA, did not appeal the IJ's determination regarding the late filing of Kaba's asylum application. Moreover, although Kaba contends in her pro se opening brief that she did not timely apply for asylum "because of [her] barrier of language," she does not argue in her supplemental brief, which was filed by counsel, that the IJ erred in finding her asylum application to be untimely.

We lack jurisdiction to consider Kaba's argument regarding the timeliness of her asylum application because she failed to exhaust it below. *See Gilaj v. Gonzales*, 408 F.3d 275, 289 (6th Cir. 2005) ("Only those claims that have been properly presented to the BIA and considered on their merits can be reviewed by the court in an immigration appeal."). In any event, we are barred from considering this claim because it concerns a factual dispute, and not a constitutional question or an issue of statutory construction. *See Vincent*, 632 F.3d at 353; *see also Lybesha v. Holder*, 569 F.3d

877, 881 (8th Cir. 2009) (holding that an argument concerning ignorance of asylum laws or application filing deadlines is a factual one); *Magdalena v. Attorney Gen. of the U.S.*, 139 F. App'x 467, 469 (3d Cir. 2005) (concluding that the court lacked jurisdiction to review the issue whether "language and cultural barriers" excused the late filing of asylum applications). As a result, we decline to review the IJ's denial of Kaba's asylum application as untimely.

**B.**

The only remaining questions on appeal concern the denial of Kaba's application for withholding of removal.[4] To prevail on such a claim, a petitioner must demonstrate that she faces a "clear probability" of "persecution" based on her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010) (citations omitted). The "clear probability" standard is more demanding "than the 'reasonable possibility' standard for obtaining asylum because it requires the applicant to show that 'it is more likely than not' that [her] life or freedom would be threatened by persecution if [s]he returned to [her] home country." *Pablo-Sanchez*, 600 F.3d at 594 (citation omitted). An adverse credibility determination is fatal to a withholding of removal claim in the absence of other evidence. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009).

---

[4]Kaba also asked for protection under the CAT, which both the IJ and the BIA denied. However, Kaba does not mention her CAT claim in her supplemental brief except to request, at the conclusion of the brief, that "the decision of the Immigration Judge be reversed and [Kaba] be granted relief under the Convention Against Torture." Because Kaba fails to develop any argument in favor of her CAT claim, we deem it waived. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).

The new standards adopted by the REAL ID Act of 2005 for credibility determinations do not apply here because Kaba filed her asylum application prior to May 11, 2005. *See Ikharo v. Holder*, 614 F.3d 622, 634 (6th Cir. 2010). Credibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). An "immigration judge's conclusion must be supported by specific reasons and must be based upon issues that go to the heart of the applicant's claim. In other words, if discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Ceraj v. Mukasey*, 511 F.3d 583, 591 (6th Cir. 2007) ( citations and quotation marks omitted).

Here, Kaba wrote in her asylum application that she was jailed for thirteen months but testified at the merits hearing that she was jailed for three days. When asked about this inconsistency, Kaba stated that she had hired someone to fill out the asylum application for her and provided this person with the appropriate information, but this person did not complete the application exactly as directed. The IJ and the BIA found Kaba not credible based on the discrepancy between the information in Kaba's asylum application and Kaba's testimony. Additionally, the IJ and the BIA found unpersuasive Kaba's explanation that someone else filled out her asylum application based on her level of education and her ability to speak and read English.

The record in this case does not compel a finding contrary to the IJ's and the BIA's adverse credibility determination. An inconsistency does not necessarily mean that the petitioner is exaggerating or dissembling. Nevertheless, the IJ and the BIA had sufficient grounds to so find. The IJ and the BIA's conclusion that Kaba was not credible was supported by specific reasons and the

relevant discrepancy could be viewed as an attempt by Kaba to enhance her claim of persecution.

There was a significant discrepancy regarding the length of Kaba's detention. Moreover, contrary

to Kaba's testimony at the merits hearing, Kaba's asylum application states that her uncle, Ely

Fofona, assisted her in completing her application and the section of the application containing the

"declaration of person preparing form if other than applicant, spouse, parent or child" is left blank.

Even if it is assumed that Kaba did hire someone to fill out her asylum application, it is difficult to

believe that she was unable to review the completed application based on her demonstrated

knowledge of English and evidence showing that she was able to at least read, if not write, English

at the time of the application's filing. Thus, we affirm the IJ's and the BIA's adverse credibility

determination.[5]

## C.

Even if a petitioner is found to be credible, "where it is reasonable to expect corroborating

evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence

should be provided . . . . The absence of such corroborating evidence can lead to a finding that an

applicant has failed to meet her burden of proof." *Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009)

---

[5]In connection with this claim, Kaba also argues that because she was not represented by counsel, she did not receive "proper advise regarding her claim to asylum." Kaba also claims in her pro se opening brief that her proceedings should have been continued because she did not have a lawyer at the time of the merits hearing. However, Kaba did not present these claims to the BIA, and therefore we lack jurisdiction to consider them in the first instance. *See Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010). Moreover, Kaba received several continuances during the two years prior to her merits hearing, and she in fact hired two successive attorneys, each of whom ultimately withdrew from representing her. We are also foreclosed from considering Kaba's allegation that the IJ did not allow for a Fulani translator to be present at the merits hearing because Kaba did not present this claim to the BIA.

(citations omitted). The IJ's "determination regarding the availability of corroborating evidence will not be reversed 'unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.'" *Id.* (citations omitted).

In support of her asylum application, Kaba presented an identification card, an RPG party card, and a letter from her ex-boyfriend that provided no information relevant to Kaba's claim. The IJ noted in the decision denying Kaba's applications that Kaba failed to submit corroborating evidence such as letters from her sister, the friend she stayed with after being released from jail, and the friend whose uncle picked her up from the airport.

On appeal, Kaba argues that "neither the IJ nor the BIA discussed or even mentioned the evidence submitted by []Kaba." Indeed, the BIA did not discuss the issue of corroborating evidence in its opinion. However, the IJ did, and we review this portion of the final administrative order. *Acquaah*, 589 F.3d at 334. Moreover, the documents submitted by Kaba prove nothing beyond that she was a member of the RPG party at some point in time, and there is no indication in the record that the corroborating evidence mentioned by the IJ was not available. Thus, we uphold the IJ's determination regarding the availability of corroborating evidence.

## D.

Because the IJ and the BIA did not err in finding that Kaba was not credible, Kaba fails to satisfy the burden of proof for withholding of removal.

## III.

In light of the foregoing discussion, we **AFFIRM** the BIA's decision denying Kaba's applications for asylum, withholding of removal, and protection under the CAT.

**Jane B. Stranch, Circuit Judge, concurring.** I concur in the result in this case and all its reasoning save reliance on the BIA's finding that Kaba was not credible. Kaba's petition for review is correctly dismissed based on the agency's determination that she failed to present reasonably available corroborating evidence. Therefore, it is unnecessary to affirm the adverse credibility determination of the IJ's and BIA and, in my opinion, preferable not to do so. I cannot view Kaba's testimony that she spent three days in prison as an attempt to enhance her claims of persecution. Had Kaba been disposed to self-serving lies, she would have testified that she was in prison for thirteen months, thus conforming her testimony with the petition and enhancing the possibility of being granted relief. Instead, Kaba testified that her petition statement contained an error. That testimony has all the indicia of truth, just as the petition statement has all the indicia of a scrivener's error or an error of translation by someone for whom English is a third language. I would not affirm the adverse credibility finding of the BIA as I believe it discourages aliens from testifying truthfully in removal proceedings.